**Dorothy VALENTINE et al.**

**v.**

**INDIANAPOLIS–MARION COUNTY BUILDING AUTHORITY et al.**

**No. IP 73–C–48.**

United States District Court,
S. D. Indiana,
Indianapolis Division.

March 14, 1973.

Patrick E. Chavis, Jr., Indianapolis, Ind., for plaintiffs.

Richard D. Wagner, of Krieg, De-Vault, Alexander & Capehart, Indianapolis, Ind., for defendants.

## MEMORANDUM OPINION

NOLAND, District Judge.

This cause came before the Court for hearing on the 16th and 26th days of February, 1973, upon plaintiffs' Motion for Preliminary Injunction. For the reasons which follow, it is the conclusion of the Court, after careful consideration of the evidence and the arguments of counsel, that said motion should be denied.

The principal purpose of a preliminary injunction is to preserve the status quo pending final determination of the controversy. 7 Moore's Federal Practice, ¶65.04[1] at 65–36 [hereinafter referred to as "Moore's"]. However, while an application for preliminary injunction is addressed to the Court's discretion, the power to issue such an interlocutory injunction should be used sparingly and such relief should not be granted except in rare instances in which the law and facts are clearly in the moving parties' favor. *Id.* at 65–35, 65–38; Miami Beach Federal Savings & Loan Association v. Callander, 256 F.2d 410 (5th Cir. 1958).

In determining whether plaintiffs have sustained their burden of establishing the propriety of a preliminary injunction in this cause, the Court is called upon to exercise its discretion

upon the basis of a series of estimates as to the following factors:

(1) The probability that plaintiffs will prevail on the merits; (2) The probability of plaintiffs suffering irreparable injury unless the injunction is issued; and (3) Balancing of the interests of the parties with special consideration of the public interest. See: 7 Moore's, ¶65.04[1] at 65–39 to 65–53; Perry v. Perry, 88 U.S.App.D.C. 337, 190 F.2d 601, 602 (1951); Virginia R. Co. v. System Federation, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789; Yakus v. United States, 321 U.S. 414, 440–441, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

■ As more specifically indicated in the Court's findings of fact, *infra,* the plaintiffs have failed to show a probability of success on the merits of this cause. While defendant Taylor, General Manager of the City-County Building, did discuss the subject of union activities with three of the plaintiff-employees, there was no evidence that these conversations had a deterrent effect on the Union's organizational activities. The evidence introduced at the hearing in this matter tended to establish that the primary motivation for discharge of the plaintiff employees was not to defeat union organization but to save an estimated $96,364.00 in maintenance costs of the City-County Building by subcontracting the maintenance work to Kentucky Building Maintenance, Inc.

The impropriety of a preliminary injunction in the instant case is made even more evident when consideration is given to the nature of plaintiff's injury and a balancing of the interests of the parties with the public interests which would be affected by such an interlocutory injunction.

■ While plaintiffs have been discharged from their employment with the defendant Indianapolis-Marion County Building Authority, any claims which they may have alleged in their complaint are compensable in money damages. Furthermore, the defendants and the public have strong interests in meeting contractual obligations with Kentucky Building Maintenance, Inc., and obtaining low-cost maintenance services for the City-County Building at a savings to the taxpayers.

■ The award of a preliminary injunction has never been regarded as a strict matter of right, even though plaintiff might otherwise sustain irreparable injury. Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944). The Supreme Court has clearly stated that where an injunction will adversely affect the public interest the impairment of which cannot be compensated:

"[T]he court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff. . . . This is but another application of the principle, declared in Virginia R. Co. v. System Federation, 300 U.S. 515, 552, 57 S.Ct. 592 [601], 81 L.Ed. 789, that 'Courts of equity may, and frequently do, go much further both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'" Yakus v. United States, 321 U.S. 414, 440–441, 64 S.Ct. 660, 675, 88 L.Ed. 834 (1944).

In accordance with the foregoing, the Court concludes that the preliminary injunction requested in this cause should not be issued, and the Court now separately finds the facts and states the conclusions of law as follows:

## FINDINGS OF FACT

1. Defendant Indianapolis-Marion County Building Authority [hereinafter referred to as the "Authority"] is a body corporate and politic organized and existing under the 1953 Indiana Acts, Chapter 54, Burns § 26–2501 et seq., IC 1971, 19–8–4–1 et seq. The Authority, by law, is governed by its Board of Directors.

2. The Authority, pursuant to its statutory powers, owns the building known and designated as the City-County Building situated in Indianapolis, Indiana and leases same to various local governmental authorities.

3. The defendant Oscar H. Taylor was employed by the Authority as Assistant General Manager of the City-County Building on February 1, 1971, and became General Manager of the City-County Building on April 1, 1972. Prior to his employment by the Authority, Mr. Taylor had many years of experience in the management of the custodial maintenance department of several public and private buildings. With respect to several of such buildings, Mr. Taylor had participated in the letting of contracts to outside custodial service institutions for the cleaning and maintenance of such buildings. As a result of this experience he had compiled and brought with him at the time of his employment by the Authority bid specifications for use in obtaining bids from outside custodial service institutions.

4. At the time of the filing of this action and at all pertinent times prior thereto the plaintiffs were employed by the Authority in the custodial maintenance department of the City-County Building.

5. During the period April 1, 1972, to September 1, 1972, the defendant Oscar H. Taylor had several discussions with members of the Board of Directors of the Authority concerning the possibility of having custodial maintenance jobs pertaining to the City-County Building performed by an outside contractor.

6. In September 1972, Mr. Herschel King, a representative of the American Federation of State, County and Municipal Employees A.F.L.–C.I.O., [hereinafter referred to as the "Union"], visited Mr. Taylor in Mr. Taylor's office. The conversation at that time consisted of Mr. King's statement as to the right of the custodial employees of the Authority to form a Union. That was the first time that Mr. Taylor had received any information concerning such subject.

7. Following one or two other brief contacts between Union representatives and Mr. Taylor, a meeting was held on November 9, 1972 between Union representatives, representatives of the Authority and two representatives from the Indiana Department of Labor. The principal subject discussed was whether consent election procedures could be agreed upon relative to a vote by the custodial employees or Union representation. No agreement was reached at this meeting. Representatives of the Authority stated that the matter would be taken up at the next regular Board of Directors meeting of the Authority to be held on November 27, 1972.

8. On November 14, 1972, a meeting of the Board of Directors of the Authority was held. The minutes of this meeting show that General Manager Taylor estimated that a substantial savings in cost could be experienced by employing an outside contractor to do the custodial maintenance work in the City-County Building. As a result of these discussions, the Board passed a resolution authorizing advertisements for bids for contract cleaning services for the City-County Building.

9. As required by law, advertisements for such bids were published on November 22 and November 27, 1972. The bid invitations reserved the right to reject all offers.

10. On December 6, 1972, another meeting was held between representatives of the Authority and the Union. A draft of a consent election agreement in a form prepared by legal counsel for the Authority was distributed and examined at this meeting. At that meeting, representatives of the Authority also discussed the action which the Authority had taken advertising for bids from outside contractors.

11. Bids by outside contractors for such custodial maintenance work were received by the Authority and opened on December 7, 1972.

12. The Board of Directors of the Authority met again on December 15, 1972. At this meeting representatives of the Union were allowed to come before the Board and present their case. One of the points emphasized by the Union representatives was that they were seeking higher pay for the custodial employees. The minutes of that meeting reflect, and the Court finds, that the primary consideration of the Board was the responsibility of the directors to the taxpayers and to the bond holders holding securities of the Authority, to secure the best possible maintenance for the City-County Building at the lowest possible cost.

13. On January 8, 1973, the Board of Directors of the Authority met. The bids received from outside contractors and cost comparison data were reviewed by the Board. These figures revealed that a substantial savings, which at that time was estimated to be in the amount of approximately $68,000.00, could be experienced by the Authority if the bid of an outside contractor, Kentucky Building Maintenance, Inc., were accepted for the cleaning of the center tower and court wing of the City-County Building (known as Part I), and if the Authority continued to do the maintenance required in the Police wing of the City-County Building. Appropriate resolutions accepting the bid of Kentucky Building Maintenance, Inc., were passed by the Board of Directors at such meeting.

14. As a result of the Board's action, Mr. Taylor took steps to terminate approximately fifty (50) of the custodial employees, including the individual plaintiffs in this action. Approximately twenty (20) of the custodial maintenance employees at the City-County Building were retained on the basis of seniority to do the custodial work required in the Police wing of the City-County Building.

15. Although the defendant Oscar H. Taylor had three conversations with three of the plaintiffs in this action during the period September 1, 1972 through January 8, 1973, concerning the subject of Union activities, there is no evidence that these conversations were a deterrent to the Union's organizational activities or to the employees' participation therein.

16. Based on actual costs for labor and supplies experienced by the Authority for the custodial maintenance of the City-County Building in the year 1972, the estimated annual savings to the Authority resulting from the contract with Kentucky Building Maintenance, Inc., is $96,364.00.

17. The actions of the Authority and its manager Oscar H. Taylor in terminating the employment of the plaintiffs and the other custodial maintenance workers at the City-County Building were primarily motivated by the economic benefits flowing from the contract with Kentucky Building Maintenance, Inc.

## CONCLUSIONS OF LAW

1. Plaintiffs have failed to show that they have a probable right or rights which may be defeated in the absence of the issuance of a preliminary injunction by this Court.

2. Any claims which plaintiffs may have as alleged in their complaint are compensable in damages.

3. The defendants and the public have strong interests in meeting contractual obligations with Kentucky Building Maintenance, Inc., and obtaining low-cost maintenance service for the City-County Building at savings to the taxpayers, and the Court, therefore, declines to restrict the reasonable discretion of the Indianapolis-Marion County Building Authority pending disposition of this cause on the merits.

It is therefore ordered that plaintiffs' Motion for a Preliminary Injunction be, and the same is, hereby denied.