WALTER S. ELDER AND INDIVIDUAL MEMBERS OF THE JEFFER-
SONVILLE FIRE DEPARTMENT *v.* CITY OF
JEFFERSONVILLE, INDIANA.

[No. 1-275A34. Filed June 11, 1975. Rehearing denied July 1, 1975.
Transfer denied December 30, 1975.]

*Hilbert L. Bradley,* of Gary, for appellants.

*Robert G. Bottorff,* of Jeffersonville, *C. Robert Knight,* of Zionsville, for appellee.

LOWDERMILK, J.—The defendants-appellants, Jeffersonville Firemen (Firemen) bring this appeal from the issuance of a permanent injunction which prohibited further strikes in connection with labor disputes between them and the City of Jeffersonville (City).

The original complaint, filed August 2, 1974, alleged that one shift of the Fire Department employees had failed to report to work, and that such action endangered the people and property of Jeffersonville. The trial court issued a restraining order without notice, the same day. On August 4, 1974, in response to City's amended complaint, the trial court issued a supplementary restraining order directed to the firemen not named in the original complaint, and further set a hearing for August 6, 1974, to determine whether the restraining order should be permanent.

Following the presentation of evidence, and the overruling of Firemen's motion for dismissal, the trial court issued a temporary injunction against all job actions or strikes. Hearing for a permanent injunction was set for August 27, 1974.

In the interim period Firemen filed various responsive pleadings, parts of which were eventually struck by the court. All prior evidence on the matter was incorporated by reference into the hearing on the permanent injunction.

On August 28, 1974, the trial court issued a permanent injunction perpetually enjoining Firemen from striking.

On appeal Firemen raise three issues:

(I) Whether the evidence was sufficient for the issuance of a temporary and permanent injunction.

(II) Whether the court erred in striking rhetorical paragraphs 4, 5, and 6 of defendants' responsive pleading.

(III) Whether the court erred in prohibiting the introduction into evidence of exhibits and testimony which were a part of the employer-employee relationship.

We feel it is necessary at the outset to clarify what is *not* involved in the above issues. First, there is no argument by Firemen that they are *not* public employees. Second, there is no issue as to whether public employees may join labor unions and select an exclusive bargaining agent of such a union. Third, there are no issues as to whether municipalities, as public employers, must *or* may negotiate with the selected union representative, or whether binding negotiation and arbitration agreements may be enacted between public employers and employees.

Thus, a careful reading of the arguments establishes the following specific arguments under each of the above general issues:

(I) Whether an injunction can issue absent proof the strike was in progress on the date of judgment.

(II) Whether it was error to strike the noted paragraphs on the ground that the course of labor negotiations was irrelevant and immaterial to the question of whether an injunction should be issued to halt a strike.

(III) Whether it was error to exclude evidence which would bear on the efforts of the parties to negotiate settle-

ment of the labor dispute prior to strike; i.e., whether such facts should be considered by the court in deciding whether to grant a request for an injunction.

In response to the above arguments, City earnestly maintains that the only issue is whether Firemen were in fact, on strike. From this City maintains that the trial court correctly exercised its discretionary power over the admission of evidence by excluding those facts which detailed the labor negotiations.

Further, City argues that the issuance of an injunction is within the sound discretion of the trial court, reversible only for abuse, and that an injunction may issue to prevent multiplicity of litigation or irreparable injury.

In our opinion, disposition of this appeal is controlled by our Supreme Court's decision in *Anderson Federation of Teachers, Local 519* v. *School City of Anderson, et al.* (1969), 252 Ind. 558, 251 N.E.2d 15; rehearing (1970), 252 Ind. 581, 254 N.E.2d 329. Although the decision in *Anderson* was not unanimous, we are bound by the language of the majority opinion. *Troue* v. *Marker* (1969), 145 Ind. App. 111, 249 N.E.2d 512; *Washington* v. *Chrysler Corp.* (1964), 137 Ind. App. 482, 200 N.E.2d 883.

The original opinion in *Anderson* relied heavily on *United States* v. *United Mine Workers* (1947), 330 U.S. 258, and quoted the following from the United States Supreme Court's discussion of labor legislation:

> " 'The purpose of the Act is said to be to contribute to the worker's "full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives . . . for the purpose of collective bargaining. . . ." *These considerations, on their face, obviously do not apply to the Government as an employer or to relations between the Government and its employees.'* " (Emphasis added.)

Our Supreme Court went on to state that:

"We are in total accord with the above language and hold that it is equally applicable to the Indiana statute."[1]

The court further concluded that:

". . . [B]oth the federal and state jurisdictions and men both liberal and conservative in their political philosophies have uniformly recognized that to allow a strike by public employees is not merely a matter of choice of political philosophies, but is a thing which cannot and must not be permitted if the orderly function of our society is to be preserved. . . ." 252 Ind. at 563.

Finally, the language of the court on rehearing summarizes their position with regard to strikes by public employees:

". . . there is no right of public employees to strike. At the time of the formation the common law state of Indiana the public strike is not in the service of the king was considered treason. Thus, in the common law state of Indiana the public strike is not lawful.

The anti-injunction statute, a 'policy statute,' does not apply to the state government or any of its subdivisions and by its very terms and definitions is confined to 'labor disputes' in the private sector of the body politic. Any change in this status of the law which might permit any type of public strike can only be accomplished by express 'public policy' legislation so stating."[2] 252 Ind. at 584.

Our Supreme Court also found that the injunctive process could be properly applied to cases involving strikes by public employees. *Anderson, supra,* at p. 560.

Given the above, the primary question presented is whether the injunction was properly granted. In deciding this question we note that:

"The granting or refusing to grant an injunction in Indiana is within the sound discretion of the trial court, and this Court on appeal will not reverse such judgment unless there has been a clear showing of abuse of discretion. *Weis* v. *Cox* (1933), 205 Ind. 43, 185 N.E. 631; *City of East Chicago* v. *Chicago and Calumet District Transit Company, Inc.* (1963), 134 Ind. App. 631,

1. Which can be found at IC 1971, 22-6-1-2, *et seq.* (Burns Code Ed.)
2. The recent collective bargaining bill, HB 1298, passed by the 1975 Legislature specifically excludes firemen.

190 N.E.2d 565." *Hickey* v. *Hickey* (1973), 156 Ind. App. 610, 298 N.E.2d 29, reh. denied August 16, 1973.

Our Supreme Court has held an abuse of discretion to be: ". . . an erroneous conclusion and judgment, one clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Mc-Farlan* v. *Fowler Bank City Trust Co.* (1938), 214 Ind. 10, 12 N.E.2d 752; *Town of Portage* v. *Clifford* (1970), 254 Ind. 449, 260 N.E.2d 566.

In the case at bar, the court could be found to have abused its discretion if it granted injunctive relief contrary to the facts, or if it granted such relief based on less than all of the properly admissable facts.

It is at this point that Firemen's arguments become salient, because the trial court refused evidence which they claim was relevant to the issuance of an injunction. Further, Firemen's argument that the strike was over when the relief was granted is applicable in this context.

Firemen's arguments are based on two equitable concepts. First, that injunctive relief is essentially for protection from *future* injury, or threatened injury, and, second, that the party seeking the equitable relief of injunction must come into court with clean hands.

In support of the first proposition, Firemen notes the comments of the trial judge, apparently made on August 27, 1974, to-wit:

". . . I'm just not real sure, but regardless, you are very important to me and *I was real glad to see you all back at work,* particularly one day when I came back to work and found out you had been in the clerk's office, because they had a short in a machine down there and needed your services. It just shows you what happens at times when everyone would least expect to show the importance of your position. . . ." (Emphasis added.)

Firemen argue that this is proof of the fact that the alleged injury to City was past; that no strike was in progress when the injunction was issued.

City does not meet this argument directly, but contends that it should not be considered on appeal because the issue was never raised at trial.

After a thorough review of the record we are of the opinion that this issue should be decided on its merits. While the arguments of Firemen during the hearings are less than precise as they relate to this particular issue, we feel they are sufficient to warrant a consideration of the applicable facts and law.

Aside from the above-quoted comments of the trial judge, Firemen have presented no other facts which indicate that the work-stoppage was over when the injunctions (both the temporary and permanent injunctions are questioned) were issued. However, we are of the opinion that even if the evidence presented *was* sufficient to show there was no strike in progress when the injunctions were issued, absent other facts, both the temporary (preliminary) and permanent injunctions were proper.

As noted above, the granting of an injunction is within the sound discretion of the trial court. Because of our holding, it must be demonstrated that, assuming no strike was in progress, it was not an abuse of discretion to issue the injunctions.

With regard to the temporary injunction we note the following language from *Tuf-Tread Corp.* v. *Kilborn* (1930), 202 Ind. 154, 172 N.E. 353:

> "Upon an application for an interlocutory order granting an injunction, it is not necessary that such a case should be made out as would entitle the plaintiff to relief at the final hearing. It is sufficient if the court finds upon the pleadings and evidence such a state of facts as makes the transaction a proper subject for investigation in a court of equity. . . ." 202 Ind. at 156.

Further, in the case of *Powell* v. *Powell* (1974), 160 Ind. App. 132, 310 N.E.2d 898, this court stated:

> "Rather, it is necessary only that the pleadings and evidence be such as to present a case for proper investiga-

tion in equity and disclose that the granting of the relief sought is necessary in order to maintain the *status quo* and prevent conflict between the parties pending the final disposition of the case. . . ." 310 N.E.2d at 901.

The above quotations do not, however, serve to grant unlimited power to the trial court. It is particularly appropriate in the case at bar that we note the following cases and language.

"... However, the remedy of injunction is limited to future acts. . . ." *Board of Comrs. of Lake County* v. *Dedelow* (1974), 159 Ind. App. 563, 308 N.E.2d 420, 423.

"... It was averred that the act sought to be enjoined had already been committed. If so, it could not be corrected by an injunction as *its purpose is to prevent and not to correct wrongs.* . . ." (Emphasis added) *Cole* v. *Duke* (1881), 74 Ind. 107, 108.

"The facts shown in the petition to dismiss indicate a voluntary relinquishment of the real estate to the sheriff. If it were otherwise, appellants must seek some other remedy, since *a thing already accomplished cannot be enjoined.*" (Emphasis added.) *Standard Mercantile* v. *Strong* (1934), 207 Ind. 55, 58, 191 N.E. 140.

In addition to the above, we are also faced with the general principle that a court should not order the doing of a useless thing. *Hutcheson* v. *Hanson* (1951), 121 Ind. App. 546, 98 N.E.2d 688; *Doss* v. *Yingling* (1937), 103 Ind. App. 555, 9 N.E.2d 139. Thus, it is apparent that, given the nature of injunctive relief, there are valid reasons for withholding the issuance of the harsh remedy of injunction.

In the case at bar, it is necessary, therefore, to determine what reasons may support the granting of the injunction. We feel that in situations similar to the present, the following considerations are particularly pertinent:

"... In determining whether plaintiffs have sustained their burden of establishing the propriety of a preliminary injunction in this cause, the Court is called upon to exercise its discretion upon consideration of the following factors: (1) The probability that plaintiffs will prevail on the merits; (2) The probability of plaintiffs suffering irreparable injury unless the injunction is issued; and (3) Balancing of the

interests of the parties *with special consideration of the public interest. . . ."* (Emphasis added.) *Indiana State Employees Assoc., Inc.* v. *Negley,* 357 F. Supp. 38, 40 (S.D. Ind. 1973). See also *Valentine* v. *Indianapolis-Marion County Building Auth.,* 355 F. Supp. 1240, 1242 (S.D. Ind. 1973).[3]

With the above considerations in mind, we take final note of *Atlantic Richfield Co.* v. *Oil, Chemical & A. Wkrs. Int. U.,* 447 F.2d 945, 947 (7th Cir. 1971). This case involved an illegal strike by employees at Atlantic's plant in East Chicago, Indiana. Before the case was heard by the Court of Appeals, the strike was halted. The court then stated:

"Against this background we must decide whether to dismiss the appeal and, if not, whether an injunction should issue.

A voluntary cessation of wrongful conduct may eliminate the need for injunctive relief but does not defeat a court's power to act. (Citations omitted) The exercise of that power depends on the court's appraisal of all relevant circumstances, including the threat or likelihood of recurring violations. (Citations omitted.) If past wrongs have been proved, and the possibility of future misconduct survives, so does the court's power. The appeal is not moot."

At the time the temporary injunction was issued there was some evidence that a strike was in progress and that it might continue. It is also evident that from such facts it [7] could have been reasonably inferred that great harm could befall one or a number of persons should a fire alarm go unanswered. Given these facts in light of the standards and considerations set forth in the *Powell* and *Indiana State Employees* cases, we hold the temporary injunction was properly granted.

For similar reasons we hold that the permanent injunction was proper. We are mindful that the required quantum of

---

3. These cases have particular relevance since both involved matters of public concern. *Indiana State Employees, supra,* involved the discharge of employees, and the effect of a possible injunction on the state public employment system. *Valentine, supra,* involved a request for an injunction by employees who maintained they were being discharged for attempting to form a labor union.

evidence may be somewhat higher when a permanent injunction is involved. *Tuf-Tread Corp.* v. *Kilborn, supra.* However, we feel that sufficient evidence was produced.

Even if the strike which prompted the litigation had subsided when the permanent injunction was issued, we are presented no evidence that the disputes which prompted the initial strike had been resolved. Thus, there existed the possibility that further "job-actions" would occur, thus again endangering the lives and property of the citizens of Jeffersonville. *Atlantic-Richfield, supra.*

Finally, we note that once there was sufficient proof presented at the hearing for the permanent injunction that a strike had occurred *or* was occurring, the trial court could properly issue an injunction based on the *Anderson* case, *supra.* Inasmuch as our Supreme Court has declared strikes by public employees improper, a temporary injunction could issue to halt ongoing labor strikes, and a permanent injunction may issue to prevent future strikes.

## II.

The basis for Firemen's second group of arguments is that a party seeking the equitable relief of injunction must come into court with "clean hands."

It is Firemen's contention that rhetorical paragraphs 4, 5, and 6 of their responsive pleading raised the issue of labor negotiations, which, they contend, would show that City refused to negotiate in good faith. As Firemen argue this pleading was proper to raise the question, they also contend that evidence tending to prove the substance of the pleading was improperly refused.

## DECISION

We have noted above that whether public employees may join or form unions, and thereafter bargain collectively are not issues in the case at bar. Firemen's "clean hands" arguments thus must be viewed as a contention that the trial

court abused its discretion by granting injunctions on less than all the properly admissable evidence.

We hold that paragraphs 4, 5, and 6 of the responsive pleading were properly struck, and that evidence bearing on said paragraphs was properly refused.

In light of the *Anderson* opinions, the course of labor negotiations before or after the alleged strike would be of little significance. Strikes by public employees have been proscribed. Whether such strike occurred after lengthy discussion or absolute refusal to negotiate apparently doesn't matter. The question to be decided is whether (1) public employees are involved, and (2) whether there is in fact a strike or "job action."

In the case at bar, there was evidence that firemen were not on the job; that the fire stations were being picketed; and that the Mayor had been warned by letter that such a loss of fire protection would occur. Thus, there was ample evidence of a strike by public employees. Such being the case, an injunction could properly issue. Therefore, whether or not we agree completely, public employees have been barred from all strike activity, and there is no exception granted because the public employer has failed or refused to negotiate.

Finding no reversible error, the judgment of the trial court is affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 329 N.E.2d 654.