Virgil MOTLEY, Richard Gordon Hatcher and City of Gary, Indiana, Defendants–Appellants,

v.

Demuth KELLOGG, Hilbert L. Bradley, Terry C. Gray, John Wilbert Richardson, Hervey Burnett, Mary Wilusz, Plaintiffs–Appellees,

and

John Shettle, Superintendent, Indiana State Police, Defendant–Appellee.

No. 3–280A48.

Court of Appeals of Indiana, Fourth District.

Sept. 24, 1980.

Rehearing Denied Oct. 23, 1980.

Rosalind G. Parr, City Atty., Charles A. Ruckman, Corp. Counsel, Gary, for defendants–appellants.

Hilbert L. Bradley and Terry C. Gray, Attys., Gary, for plaintiffs–appellees.

CHIPMAN, Judge.

Virgil Motley, Mayor Richard G. Hatcher, and the City of Gary, Indiana, collectively appeal from an order granting a preliminary injunction enjoining Virgil Motley, Acting Chief of Police, from interfering with the distribution of handgun applications and ordering him to make applications available to citizens of Gary, Indiana, who desire to apply for handgun licenses. The issue upon appeal is whether the trial court abused its discretion in granting this injunction.[1]

We hold the preliminary injunction was properly granted.

The record discloses that for approximately ten years prior to January 1, 1980, applications for handgun permits were routinely available at the office of the Gary Chief of Police. These were state forms which the Gary Police Department obtained from the Indiana State Police and then made available to Gary citizens. In an effort to control the number of handguns on

---

1. We will not address the appellees' allegations regarding the trial court's denial of their motion for partial summary judgment since this issue is not properly before us. Ind. Rules of Procedure, Trial Rule 56(E).

the streets in Gary, however, an agreement was apparently reached between Gary's Acting Chief of Police, Virgil Motley and its Mayor, Richard Hatcher, that these applications would no longer be distributed from Motley's office, and a sign to this effect was posted on the Chief's office door announcing: "No more gun applications will be given out effective January 1, 1980. Thank you!!! Chief's Office." Thereafter, although the Gary Police Department never refused to accept applications, the application forms were no longer available there, and the record indicates citizens of Gary could not obtain these forms elsewhere.

This suit was commenced by Gary citizens who had presented themselves at the Gary Police Department and been unable to secure a gun permit application. The plaintiffs–appellees include business persons in the community who testified they felt it necessary to carry a gun because of large sums of money they transported, security guards for a private detective agency, an attorney, and a Gary homeowner. All were refused gun applications due to the department's adoption of the blanket policy that henceforth, no applications would be distributed. Among the relief sought by these plaintiffs was a preliminary injunction prohibiting the appellants from further withholding handgun license applications. The trial court issued the following preliminary injunction:

"A) John T. Shettle, Superintendent Indiana State Police is hereby enjoined from the arbitrary and capricious distribution of applications for hand gun permits; that said John T. Shettle, Superintendent shall make available to the defendant Virgil C. Motley such number of handgun permits as shall be requested by the defendant Virgil C. Motley, to be made available by the defendant Virgil C. Motley to citizens of Gary requesting same for the purpose of applying for handgun permits.

B) That said Superintendent shall make said applications available at the Police Station of the City of Gary, located at 13th and Broadway. That the Acting Chief of Police, Virgil C. Motley, shall in no way interfere with the distribution of said applications; that the said Acting Chief of Police shall immediately process any applications received as provided by statute and shall not in any way or manner delay the processing of said applications."

Appellants maintain this preliminary injunction is contrary to law because they are under no statutory duty to distribute or otherwise make available handgun permit applications. We disagree.

■ It is well settled the granting or denial of an injunction rests within the sound discretion of the trial court. *Peters v. Davidson, Inc.,* (1977) Ind.App., 359 N.E.2d 556; *Elder v. City of Jeffersonville,* (1975) 164 Ind.App. 422, 329 N.E.2d 654. In cases of this posture, we review for an abuse of discretion; we do not review the final merits of the case since a preliminary injunction, unlike a permanent injunction, is issued during the pendency of an action before a determination is made on the merits. *Indiana & Michigan Electric Co. v. Whitley County Rural Electric Membership Corp.,* (1974) 161 Ind.App. 492, 316 N.E.2d 584. A preliminary injunction is not a final adjudication of the merits, *Rees v. Panhandle Eastern Pipe Line Co.,* (1978) Ind.App., 377 N.E.2d 640; consequently, a party need not show they will prevail on the merits.

"The rules governing the granting of a temporary injunction or an interlocutory order are different from those which would prevail in the hearing on the permanent injunction. It is not necessary that the proof be as complete and convincing in the granting of a temporary injunction or interlocutory order as that required at the time of the determination of the permanent injunction. It has been said that the granting of an interlocutory order is within the sound discretion of the trial court and the petitioner need only make out a prima facie case."

*Jos. Guidone's Food Palace, Inc. v. Palace Pharmacy, Inc.*, (1969) 252 Ind. 400, 406, 248 N.E.2d 354, 357. Moreover, we will not interfere with the exercise of discretion in this regard by the trial court unless it is shown the court acted arbitrarily or the action in question constitutes a clear abuse of discretion. *Negley v. Lebanon Community School Corp.*, (1977) Ind.App., 362 N.E.2d 178; *Powell v. Powell*, (1974) 160 Ind.App. 132, 310 N.E.2d 898.

Our Supreme Court has held an abuse of discretion to be:

> ". . . an erroneous conclusion and judgment, one clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom."

*McFarlan v. Fowler Bank City Trust Co.*, (1938) 214 Ind. 10, 12 N.E.2d 752, 754. We find there were, in fact, reasonable grounds for the action of the trial court herein.

■ The trial court was called upon to consider: (1) the probability that plaintiffs would prevail on the merits, (2) the probability of plaintiffs suffering irreparable injury unless the injunction was issued, and (3) balance the respective interests of the parties with special consideration for the public interest. *Elder v. City of Jeffersonville*, (1975) 164 Ind.App. 422, 329 N.E.2d 654, 659. We believe the trial court properly weighed these considerations and after viewing the exigencies of the circumstances, determined the severity of the impact of this injunction upon the appellants was outweighed by the harm to these plaintiffs as well as the general public, since not making applications available at the chief's office effectively denied members of the community the opportunity to obtain a gun permit and bear arms for their self–defense.

The statutory requirements concerning the issuance of gun permits are found in Ind.Code 35–23–4.1–5, which in pertinent part provides:

> "(a) A person desiring a license to carry a handgun *shall apply to the chief of police* or corresponding police officer of the municipality in which he resides. If that municipality has no such officer, or if the applicant does not reside in a municipality, he shall apply to the sheriff of the county in which he resides, or if he is a resident of another state and has a regular place of business or employment in this state, then to the sheriff of the county in which he has a regular place of business or employment. *The officer to whom the application is made shall* ascertain concerning the applicant his name, full address, length of residence in the community, whether or not his residence is located within the limits of any city or town, occupation, place of business or employment, criminal record, if any, and convictions (minor traffic offenses excepted), age, race, sex, nationality, date of birth, citizenship, height, weight, build, color of hair, color of eyes, scars and marks, whether or not the applicant has previously held an Indiana license to carry a handgun and, if so, the serial number of the license and year issued, whether or not his license has ever been suspended or revoked, and if so, the year and reason for the suspension or revocation, and the applicant's reason for desiring a license. *The officer to whom the application is made shall* conduct an investigation into the applicant's official records and verify thereby the applicant's character and reputation, and shall in addition verify for accuracy the information contained in the application, and shall forward this information together with his recommendation for approval or disapproval and one [1] set of legible and classifiable fingerprints of the applicant to the superintendent who may make whatever further investigation he deems necessary. In addition, whenever disapproval is recommended, the officer to whom the application is made shall provide the superintendent and the applicant with his complete and specific reasons, in writing, for the recommendation of disapproval. . . . The superintendent

shall prescribe all forms to be used in connection with the administration of this chapter." (emphasis added)

Pursuant to this statute, it is not disputed that a Gary citizen who desires a gun permit must apply to the Gary Chief of Police, and it is his responsibility to ascertain the requisite personal data, conduct the initial investigation into the applicant's character, and make a recommendation for approval or disapproval of the license. The appellants maintain, however, that this statute does not place a duty upon the Chief to distribute or otherwise make handgun permit applications available. While this duty is not expressly imposed, we believe when the legislature enacted this licensing procedure and ordered those desiring such a license to apply to their local chief of police, it is reasonable to assume the legislature intended that when those persons applied to the chief, they would be furnished an application. Since our courts endeavor to effectuate the general intent of the legislature in enacting the legislation in question, *Ross v. Schubert,* (1979) Ind.App., 388 N.E.2d 623; *Economy Oil Corp. v. Indiana Department of State Revenue,* (1974) 162 Ind.App. 658, 321 N.E.2d 215, we believe the trial court acted properly in granting this preliminary injunction.

The trial court was faced with a situation in which the testimony showed the long–standing practice of the Gary Chief of Police to make those applications available had been abruptly halted, while at the same time, citizens of Gary, Indiana, could not obtain these applications elsewhere. In order to protect the public interest, which is important when considering injunctive relief, *Rees v. Panhandle Eastern Pipe Line Co.* (1978) Ind.App., 377 N.E.2d 640, we believe the trial court was well–advised to issue this injunction.

The granting of this preliminary injunction was proper.

MILLER, J., and YOUNG, P. J., concur.