BRANT CONSTRUCTION COMPANY, INC., and United States Fidelity and Guaranty Company, Appellants (Plaintiffs Below),

v.

LUMEN CONSTRUCTION, INC., Appellee (Defendant Below).

No. 37A03–8702–CV–43.

Court of Appeals of Indiana, Third District.

Nov. 23, 1987.

Rehearing Denied Jan. 14, 1988.

Stephen M. Maish, Patrick A. Mysliwy, Maish & Mysliwy, Hammond, Edward P. McNeela, McNeela & Griffin, Ltd., Chicago, Ill., for appellants.

Gordon A. Etzler, F. Joseph Jaskowiak, Mark E. Schmidtke, Valparaiso, for appellee.

HOFFMAN, Judge.

Brant Construction Company, Inc. (Brant) and United States Fidelity and Guaranty Company (USF & G) appeal from judgments entered in favor of Lumen Construction, Inc. (Lumen) in the Jasper Supe-rior Court. The facts of this case, as found by the trial court, are as follows:

In 1982, the City of Valparaiso requested bids on a waste water treatment plant expansion project, E.P.A. Project No. C18075302. Brant's bid of approximately $20,000,000.00 was the low bid. The project was to be paid for with funds paid 75% by the Environmental Protection Agency (E.P.A.), 15% by the City of Valparaiso (City) and 10% by the State of Indiana (State). As a condition under the grant whereby the City was to receive the federal funding for the project, the City agreed to comply with the Minority Business Enterprise (MBE) requirements of the E.P.A. These requirements called for the City to use good faith efforts to obtain MBE contractors to perform at least 10% of the project and impose similar obligations on all its contractors.

Brant was notified by the City that it was the apparent low bidder and Brant was then required to provide information to the City regarding MBE contractors who would perform work on the project. Unless Brant had 10% MBE participation, Brant would forfeit its rights to the contract.

On March 8, 1982, the day that Brant was required to provide the City with MBE documentation, James Hough of Region Construction received a telephone call from Brant officers asking if Hough could find a MBE within a half hour. Hough was told that if he could not find a MBE to work on the project in that time, Brant stood a chance of losing the contract with the City. Louis Villasenor, the owner of MBE Lumen Construction, was at this time remodeling James Hough's bathroom. Hough asked Villasenor if he was interested in a joint venture project and, when Villasenor responded in the affirmative, Hough informed Brant that he had the necessary MBE and to add Lumen to the list of subcontractors for the project. Region Construction, James Hough's company, subsequently prepared a $1,500,000.00 bid on the excavation work for the project which was later reduced to $1,200,000.00. The bid was submitted in Lumen Construc-

tion's name although Lumen had no material participation in the negotiations of the contract.

On July 9, 1982, the City contracted with Brant to be the prime contractor for the project. Brant, as principal, and USF & G, as surety, executed performance and payment bonds in the amount of $19,403,666.00 to guarantee the completion and payment for all persons, subcontractors and corporations furnishing material for or pertaining to labor provided for in the contract between the City and Brant.

The excavation work on the project done in 1982, which included work required by Lumen on the contract, was performed by Region Construction with Region's equipment, operators, supervisors and with James Hough as superintendent. The exclusion of Lumen and Louis Villasenor was done with Brant's knowledge and participation. Lumen's attempts to participate in the project, including the setting up of an accounting/management procedure, attempts to obtain financing, and hiring of employees to participate in work on this project, were initially unsuccessful because of resistance to Lumen's involvement by Brant and Region. Lumen finally acquired control over its own work on the project and at Brant's instruction performed extra work, including construction and maintenance of temporary roads, valued at over $400,000.00.

On August 12, 1983, Lumen was removed from the project by Brant because of Lumen's inability to pay its suppliers, which failure the trial court found to be directly attributable to Brant's "heavy-handed" control over the funds which Lumen was to receive.

The dispute regarding the dealings between Lumen and Brant was resolved in Lumen's favor by the Jasper Superior Court on October 30, 1986 in a 27–page judgment following a 13–day bench trial. The trial court found that there was no enforceable contract between Brant and Lumen and awarded damages to Lumen based on the equitable theory of *quantum meruit*. The trial court also found that Brant had violated Lumen's civil rights and awarded Lumen loss of profit damages, punitive damages, attorneys' fees, expenses and expert fees. On March 4, 1987, the trial court entered an order granting Lumen's Motion to Enforce a Settlement Agreement between Lumen and USF & G. USF & G's appeal from that order is consolidated with Brant's appeal from the trial court's judgments in favor of Lumen.

Brant and USF & G present eight issues, as consolidated and restated, for review:

(1) whether the trial court erred in awarding Lumen recovery based on *quantum meruit;*

(2) whether there was sufficient evidence to support the trial court's award of *quantum meruit* damages to Lumen;

(3) whether the trial court erred in finding that Lumen had a cause of action against Brant under 42 U.S.C. § 1981 and 42 U.S.C. § 1983;

(4) whether there was sufficient evidence to support the trial court's finding that Brant violated Lumen's civil rights;

(5) whether the trial court erred in awarding Lumen punitive damages;

(6) whether Brant and USF & G are entitled to full or partial satisfaction of judgment for consideration Lumen received from Region Construction and the City of Valparaiso;

(7) whether the trial court erred in finding that USF & G and Lumen entered into a settlement agreement; and

(8) whether there was sufficient evidence to support the trial court's award of damages for Brant's violation of Lumen's civil rights.

■ Brant first argues that the trial court erred in awarding Lumen a recovery based on *quantum meruit* because a subcontract agreement existed between Brant and Lumen. The trial court, however, ruled that the contract was invalid and had no legal effect because there was no meeting of minds between Brant and Lumen. Brant and Lumen had previously stipulated that a valid contract existed and Brant argues that the trial court's finding was in error because it contravened the stipulation

between the parties. However, the trial court was not bound by the stipulation. The enforceability of a contract is a question of law, *see Hybarger v. American States Ins. Co.* (1986), Ind.App., 498 N.E.2d 1015, 1019, and parties may not stipulate to a question of law. *App v. Class* (1947), 225 Ind. 387, 396, 75 N.E.2d 543, 548. *See also, Wireman v. Fairchild* (1983), Ind.App., 450 N.E.2d 1011, 1012.

■ Sufficient evidence was introduced to support the trial court's determination that no enforceable contract between Brant and Lumen existed because there was no "meeting of the minds." In order for a contract to be enforceable, there must be a "meeting of the minds" between the parties. *Wagoner v. Joe Mater & Associates, Inc.* (1984), Ind.App., 461 N.E.2d 706, 708. The evidence showed that Lumen neither negotiated nor prepared the agreements that Brant sought to rely on. The evidence further showed that this agreement literally called for Lumen to do work constituting nearly the entire project, a result that none of the parties here intended. Because the decision of the trial court that no enforceable contract existed is upheld, there is no need to address Brant's arguments that Lumen breached said subcontract agreement or that Brant is entitled to delay damages, costs, attorneys' fees and prejudgment interest pursuant to that agreement.

Brant next argues that there was insufficient evidence to support the trial court's award of *quantum meruit* damages to Lumen. The standard of review for a damage award is that no reversal will occur if the award is within the scope of evidence before the trial court; if the award of damages is supported by the record, the determination of damages is within the sound discretion of the trial court. *Indiana U. v. Indiana Bonding & Sur.* (1981), Ind.App., 416 N.E.2d 1275, 1288.

■ The law in Indiana conforms to the equitable theory of *quantum meruit;* where one accepts valuable services from another the law implies a promise to pay for those services. *Silverthorne v. King* (1979), 179 Ind.App. 310, 314, 385 N.E.2d

473, 476. Brant first challenges some of the evidence of work done introduced by Lumen at trial, including Lumen's "job logs" from the company's work on the project and the testimony of expert witnesses James Satterlee and James Hough regarding the value of the extra work performed by Lumen. Brant's argument that the "job logs" do not come under the business record exception to the law against hearsay is not persuasive. Business records made in the regular course of business are admissible when properly identified. *In re Mental Commitment of M.P.* (1986), Ind.App., 500 N.E.2d 216, 220. Brant's claim that the "job log" was prepared in anticipation of trial and thus not admissible under the business record exception to the hearsay rule is unsupported and is also refuted by the testimony of Thomas Govert, who made the entries in Lumen's "job log," that the entries were made on the days the work was performed and that keeping a "job log" was standard procedure for every construction job he had worked on.

■ Brant's challenge to the testimony of James Satterlee and James Hough focuses on the fact that both witnesses relied upon the "job logs" in testifying regarding the extra work performed by Lumen. It being already established that the "job log" was both admissible hearsay and the type of record usually prepared in order to assess the work done on a construction project, there was no error resulting from Hough's and Satterlee's reliance upon the "job log." An expert witness may rely on hearsay along with personal observation to formulate an opinion, provided the hearsay relied upon is the type customarily relied upon by such experts. *Clouse v. Fielder* (1982), Ind.App., 431 N.E.2d 148, 155. Brant also claims error in the trial court's reliance upon Hough's allegedly incredible testimony, but it is well settled that it is beyond the province of this Court to judge the credibility of witnesses. *Walters v. Dean* (1986), Ind.App., 497 N.E.2d 247, 254.

■ Brant also alleges that the trial court's award of *quantum meruit* damages was in error because Lumen did not

adequately prove its claim that uncompensated extra work was performed and that Lumen did not properly mitigate its damages. Further, Brant claims error because the trial court did not give Brant adequate credit for equipment it provided Lumen and payments it gave Lumen. In calculating the amount to award Lumen for uncompensated work on the project, the trial court relied on the estimates of witnesses James Hough and James Satterlee. By their testimony, Lumen adequately proved its damages and since the amount of the award was supported by evidence before the trial court, this Court will not disturb the trial court's decision. *See, Indiana U., supra* at 1288 and *Walters, supra* at 254. Brant claims that Lumen's award must be reduced due to Lumen's failure to mitigate its damages. However, Brant has failed to show that Lumen did not use reasonable diligence to mitigate its damages. *See, Colonial Discount Corp. v. Berkhardt* (1982), Ind.App., 435 N.E.2d 65, 67. Brant's argument that a method of hauling different from the method Lumen employed would have been less expensive does not alone meet Brant's burden to prove Lumen did not use reasonable diligence to mitigate.

■ Brant's final allegation of error regarding the trial court's award of *quantum meruit* damages is that the trial court incorrectly awarded Lumen pre-judgment interest on the *quantum meruit* recovery. An award of pre-judgment interest is based on the desire to permit recovery of full compensation by an injured party and such an award is proper when the damages are readily ascertainable. *Moridge Mfg. Co. v. Butler* (1983), Ind.App., 451 N.E.2d 677, 683. The trial court's award of pre-judgment interest was limited to those damages which were "specifically fixed and easily ascertainable on August 12, 1983," the date of Lumen's removal from the project, and thus the trial court's award conformed to the law regarding pre-judgment interest.

■ Brant alleges that the trial court erred in finding that Lumen had a cause of action for violation of its civil rights by Brant under 42 U.S.C. §§ 1981 and 1983. 42 U.S.C. § 1981 reads as follows:

"Equal rights under the law

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

The trial court properly found a § 1981 cause of action in Lumen's allegation that Brant's interference with Lumen's performance on the project and refusal to offer the required assistance to Lumen had the effect of preventing Lumen from making and enforcing contracts. Lumen's claim alleged that Brant's actions prevented Lumen from receiving the benefits of its involvement in this project and caused Lumen to forfeit other contracts because of its financial inability to continue performance under them. The United States Supreme Court has explicitly held that § 1981 prohibits racial discrimination in the making and enforcement of public and private contracts. *Runyon v. McCrary* (1976), 427 U.S. 160, 168, 96 S.Ct. 2586, 2593, 49 L.Ed. 2d 415. The Seventh Circuit has held that allegations of a racially motivated interference with beneficiary rights was sufficient to maintain an action under § 1981. In *Jones v. Local 520, Intern. U. of Oper. Eng.* (7th Cir.1979) 603 F.2d 664, 665, the Seventh Circuit found that the appellants' claim alleging deprivation of beneficiary rights of black engineers as gained through a preferential hiring agreement was sufficient to maintain an action under § 1981.

■ Brant also disputes the trial court's finding that Lumen had a cause of action under 42 U.S.C. § 1983. To establish a violation under § 1983, a plaintiff must prove that the defendant acted under color of state law to deprive the plaintiff of rights, privileges, or immunities under the Constitution or laws of the United States. *Bailey v. Andrews* (7th Cir.1987) 811 F.2d 366, 371. The trial court's finding was

supported by evidence that the project was built on land owned by the City of Valparaiso and funded by federal, state and city monies. That evidence and the testimony of John Hardwick, the City Engineer for Valparaiso, regarding the involvement of the City and the Board of Public Works and Safety in the project and the MBE requirements for the project set out by the E.P.A. not only supported a § 1983 claim but also supported the trial court's finding that Brant had carried out a governmentally-supported project in such a way as to deprive Lumen of its right to make and enforce contracts and to the benefits of the MBE program set up by the E.P.A. *See, e.g., Maine v. Thiboutot* (1980), 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 and *Fullilove v. Klutznick* (1980), 448 U.S. 448, 100 S.Ct. 2758, 65 L.Ed.2d 902.

■ Brant's final argument is that Lumen's rights are not protected by the civil rights statutes because it is a corporation owned by "light-skinned" Hispanics and thus not a "nonwhite" protected by § 1981. In *Saint Francis College v. Al–Khazraji* (1987), — U.S. —, 107 S.Ct. 2022, 2028, 95 L.Ed.2d 582, the United States Supreme Court rejected a similar argument in holding that a college professor who alleged discrimination based on his Arab ancestry was a person Congress intended to protect under § 1981:

"Based on the history of § 1981, we have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory." 107 S.Ct. at 2028.

In light of the Supreme Court's opinion in *Saint Francis College,* it is clear that even "light-skinned" Hispanics, especially Hispanics like the Villasenors who were involved in the project directly as a result of their minority status, are entitled to § 1981 protection from discrimination.

■ The fourth allegation of error presented by Brant questions the sufficiency of the evidence supporting the trial court's finding that Brant violated Lumen's civil rights. Brant submits that there was no evidence of probative value showing intentional discrimination against Lumen by Brant. The standard of review for a claim questioning the sufficiency of the evidence supporting a trial court's determination is well settled: the evidence will not be reweighed nor the credibility of the witnesses judged; rather, this Court will only examine that evidence and reasonable inferences which support the trial court decision. *Walters, supra,* 497 N.E.2d at 254. The evidence here adequately supports the trial court determination that Brant violated Lumen's civil rights. Evidence was presented to show that Brant attempted to prevent Lumen from participating in the project, that Brant wrongfully exercised control over Lumen's finances, that Lumen's employees were intimidated into leaving the job site and that Brant failed to assist Lumen as was required by MBE regulations. This evidence adequately supported the trial court's conclusion that Brant intended to use Lumen and Lumen's MBE status as a front in order to obtain a $20,000,000.00 contract and that Brant then wrongfully attempted to prevent Lumen from benefiting from the contract.

■ Brant's fifth allegation of error is that the trial court erred in awarding Lumen punitive damages for violation of its civil rights. Punitive damages are recoverable under 42 U.S.C. § 1981 and 42 U.S.C. § 1983. *See, Johnson v. Railway Express Agency, Inc.* (1975), 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (§ 1981) and *Smith v. Wade* (1983), 461 U.S. 30, 35, 103 S.Ct. 1625, 1629, 75 L.Ed.2d 632 (§ 1983). In Indiana, the awarding of punitive damages is discretionary and is awarded to punish wrongdoing and to deter others from similar conduct. *Hall-Hottel Co. v. Oxford Square Co-op, Inc.* (1983), Ind. App., 446 N.E.2d 25, 31. The evidence here showed that Brant, through deception of Lumen, attempted to circumvent the MBE requirements and thus violate the spirit of

a program designed to give minority contractors experience in government-funded construction projects. That evidence clearly supports the trial court's decision that Brant's wrongdoing was punishable and that it was appropriate to award punitive damages in order to deter Brant and others from future similar abuse of the MBE program.

■■■ Brant and USF & G argue in the sixth allegation of error that the trial court erred in failing to give full or partial satisfaction of judgment for consideration Lumen received from Region Construction and the City of Valparaiso. Brant and USF & G correctly point out that a plaintiff is prevented by law from receiving a double recovery for a single wrong. *Barker v. Cole* (1979), Ind.App., 396 N.E.2d 964, 970. Brant and USF & G rely on a loan receipt agreement negotiated between Brant, USF & G and Region Management and Leasing, Inc. as proof that Brant and USF & G paid for equipment used by Lumen and that the trial court's judgment awarding *quantum meruit* damages for "extra work," including equipment, should be set off by the amount of the equipment's worth. The trial court properly rejected this argument upon a review of the following pertinent parts of the loan receipt agreement between Brant and USF & G and Region:

"1. Contemporaneously with the execution of this instrument Brant will loan to Region Mgmt. the sum of Two Hundred Ten Thousand Dollars and No Cents ($210,000.00), as a loan, without interest, repayable only as follows:

a. If Region Mgmt. obtains a judgment against Lumen in an amount less than $210,000, then the difference between the amount of said judgment and $210,000 shall be immediately due Brant from Region Mgmt. on the date of said judgment, with interest at the statutory rate of interest on judgments under Indiana law in effect on the date of judgment, until payment.

b. If Region Mgmt. obtains a judgment against Lumen in an amount in excess of $210,000, then all amounts recovered by Region Mgmt. with respect to said judgment in excess of the difference between the amount of said judgment and $210,000 shall be immediately due Brant from Region Mgmt. on the date of receipt of such excess amounts with interest at the statutory rate of interest on judgments under Indiana law in effect on the date of receipt of such excess funds, until payment."

The trial court reviewed this agreement and the evidence that Region entered into a settlement with Lumen that included the release of any claim by Region that Lumen owed Region rental monies for equipment used on the project. The trial court then concluded that Brant and USF & G could not be entitled to any credit from Lumen for the amount of money paid to Region pursuant to the loan receipt agreement because Region has admitted that Lumen owes no money for rental equipment. The trial court's judgment denying Brant and USF & G any setoff for money paid to Region pursuant to the loan receipt agreement is supported by the evidence of Region and Lumen's settlement agreement and thus is not in error.

■■■ No error is found in the trial court's refusal to allow Brant and USF & G a setoff as a result of consideration received from the City of Valparaiso. Lumen's settled claim against the City was for civil rights violations only. Brant and USF & G made no showing at trial or on appeal that the City was a joint obligor or tortfeasor and thus are not entitled to any setoff of judgment. *See, Consol. Rail Corp. v. Travelers Ins. Co.* (1984), Ind., 466 N.E.2d 709, 712.

■■■ The seventh allegation of error presented here claims that the trial court erred in finding that USF & G and Lumen entered into a settlement agreement. In granting Lumen's Motion to Enforce a Settlement Agreement, the trial court found that the amount of settlement had been agreed upon by the parties and that the respective rights and obligations of each party were clearly set out in the oral settlement agreement. USF & G first argues that the trial court lacked the jurisdiction

to entertain Lumen's Motion to Enforce a Settlement Agreement. While it has long been the law in Indiana that such an agreement can be enforced by a trial court of general jurisdiction, *see Indiana Farmers Mut. Ins. Co. v. Walters* (1943), 221 Ind. 642, 649, 50 N.E.2d 868, 871, there is no direct Indiana authority to support the trial court here entertaining this Motion to Enforce a Settlement Agreement which pertained to the litigation currently before that court. However, in federal courts it has long been the rule that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them. In *Aro Corp. v. Allied Witan Co.* (6th Cir.1976), 531 F.2d 1368, 1371, the Sixth Circuit explained the rationale for that rule:

> " 'A compromise or settlement of litigation is always referable to the action or proceeding in the court where the compromise was effective; it is through that court the carrying out of the agreement should thereafter be controlled. Otherwise the compromise, instead of being an aid to litigation, would be only productive of litigation as a separate and additional impetus.' "

(quoting *Melnick v. Binenstock* (1935), 318 Pa. 533, 179 A. 77) *See also: Meetings & Expositions, Inc. v. Tandy Corporation* (2nd Cir.1974), 490 F.2d 714, 717; *Cia Anon Venezolana De Navegacion v. Harris* (5th Cir.1967), 374 F.2d 33, 35; and *Cummins Diesel Michigan, Inc. v. The Falcon* (7th Cir.1962), 305 F.2d 721, 723. *But see, McCall–Bey v. Franzen* (7th Cir. 1986) 777 F.2d 1178, 1186. Inasmuch as the twin interests of judicial economy and encouragement of settlement agreements are both served by the trial court here entertaining Lumen's Motion to Enforce a Settlement Agreement, the trial court's decision to rule on the motion was not in error.

USF & G challenges the sufficiency of the evidence supporting the trial court's finding that adequate consideration for the agreement and a meeting of the minds existed between Lumen and USF & G. Adequate evidence to support the trial court's findings was produced in the form of affidavits of Lumen's attorneys at the hearing on the Motion to Enforce a Settlement Agreement. Those findings will thus not be disturbed here. *See, Walters v. Dean, supra,* 497 N.E.2d at 254. USF & G's allegations that the trial court erred in accepting affidavits in lieu of testimony and that Lumen's attorneys were not authorized to enter into a settlement agreement were waived by USF & G's failure to object to either alleged deficiency at the hearing on the Motion to Enforce a Settlement Agreement. *See, Woods v. Brown County Plan Com'n* (1983), Ind.App., 446 N.E.2d 973, 977.

USF & G's final challenge to the trial court's enforcement of the settlement agreement alleges that the trial court's order was void in that it was in contravention of a United States Bankruptcy Court order restraining such an agreement between the parties. This challenge is also waived for failure to raise any objection prior to the filing of the Motion to Correct Error. Further, this challenge by USF & G is not supported by the Temporary Restraining Order itself. The Bankruptcy Court, which was presiding over Brant's bankruptcy proceedings, ordered only that USF & G "be restrained from paying any monies of any claims for Lumen Construction, Inc." and did not mention any restraint on entering into a mere agreement to settle claims. Also, the evidence before the trial court in the hearing on the Motion to Enforce a Settlement Agreement showed that USF & G and Lumen reached a settlement agreement on February 5, 1987, the day before the Bankruptcy Court's Temporary Restraining Order was handed down. By its very nature, a temporary restraining order is not capable of enjoining an event which has already taken place. *See, e.g., Elderet al. v. City of Jeffersonville* (1975), 164 Ind. App. 422, 429, 329 N.E.2d 654, 657.

The final allegation of error is presented by Brant and alleges that the trial court's award to Lumen for civil rights violations is excessive. The standard of review for such an allegation has already been stated here: as long as the

award is supported by evidence before the trial court, the award will not be questioned by this Court on appeal. *Indiana U. v. Indiana Bonding & Sur., supra,* 416 N.E.2d at 1288. A review of the record of proceedings shows that the trial court's award of $50,000.00 to Lumen was properly supported by testimony of Mary Villasenor that $50,000.00 was the net worth of Lumen and that Lumen was insolvent by August 1983. The trial court's award of $138,402.60 in loss of profit damages was adequately supported by the testimony of James Satterlee that if Lumen were to have been awarded a contract to perform work actually required by the line items set forth in Lumen's pay request, Lumen's profit would have been $138,402.60. The trial court's award of $44,594.00 in lost profits on other work was also supported by James Satterlee's testimony that Lumen would have made that amount of profit on other work had it not been unable to complete that work due to the problems encountered on its project with Brant. The award of $155,132.00 in attorneys' fees is challenged by Brant because that amount was far in excess of the amount charged by Brant's attorney for the same litigation. Brant cites no authority for the position that attorneys' fees must be equal on both sides of an action and no persuasive reason is given for this Court to adopt such a rule.

The trial court's award of $31,259.00 in expenses and expert fees to Lumen is also challenged by Brant. Brant correctly points out that this award was $11,000.43 in excess of the amount of expenses claimed by Lumen. A search of the record reveals no support of the trial court's award of the extra $11,000.43 in either Lumen's exhibits or the testimony and affidavit of Lumen's attorney regarding the cost of the litigation, and Lumen failed to address this issue in its appellee's brief. The award of $31,259.00 for expenses and expert fees is thus reversed and this cause is remanded to the trial court with instructions to amend the award of expenses and expert fees to Lumen from $31,259.00 to $20,258.57. In all other respects, the trial court is affirmed.

Affirmed in part and reversed and remanded in part.

STATON and ROBERTSON, JJ., concur.