JOHN BURKHART *v.* ARDATH Y. BURKHART.

[No. 1-775A132. Filed June 29, 1976. Rehearing denied August 5, 1976.]

---

*Charles E. Barker,* of Indianapolis, *Stephen W. Terry, Jr.,* of Indianapolis, for appellant.

*William F. Welch, McHale, Cook & Welch,* of Indianapolis, *Stephen A. Free, Ging, Free & Brand,* of Greenfield, for appellee.

LOWDERMILK, J.—Plaintiff-appellant John Burkhart (Husband) brought an action for absolute divorce against his wife, defendant-appellee Ardath Y. Burkhart (Wife). The ground for the divorce alleged by the Husband was "cruel and inhuman treatment," which was "somewhat constrained" on him by the law, and he characterized as "better terminology" that he "somewhat gradually fell out of love" with his wife.

The Wife eventually filed a counterclaim for absolute divorce. The trial court denied the Husband's claims, granted an absolute divorce to the Wife, and ordered an appropriate

property settlement. The Husband appeals from the award, contending that the trial court abused its discretion in awarding 69 per cent of the marital estate to the Wife, that such award causes the Husband severe cash flow and income tax problems, and that the award of attorneys' fees in the amount of $50,000 was both procedurally improper and excessive in amount.

Although two distinct issues are raised in regard to the trial court's division of the marital estate, we feel that the Husband has somewhat confused the issues by his characterization of the problem in his presentation to this court. In addition, the various assets of the marital estate have not been precisely evaluated in all regards, and the trial court decree did not assign a set value to each individual asset that was awarded to each party. Both the Husband and the Wife choose to use the figures relied on by the other party in the trial court, for purposes of this appeal. Inasmuch as the division of the majority of the assets is not in dispute, we do not find the problems presented to be insurmountable.

Briefly stated, the marital estate consisted of a large residence in Indianapolis; various lake properties at Culver, Indiana; several other pieces of real property, some of which were purchased by the Husband after this action began; various bank accounts, partnership interests, and oil and gas interests; various stocks and notes of a value in excess of $300,000; and the main asset, 319,437 common shares of College/University Corp. (C/U) stock, which was valued at $8.50 per share at the time of trial, but which had certain selling restrictions and other problems that limited its general marketability.

The trial court's award pretty much adopted the previous agreement of the parties. There was no dispute over who was to receive which items from the marital estate, other than the stock, certain cash payments, and the award of attorneys' fees. Specifically, the court awarded the Wife the residences in

Indianapolis and at Culver; her personal items; $75,000 in cash within six months; 119 monthly installments of $2,100 each taxable to the Husband; up to 119 monthly installments of $1,666, but only for as long as she may live, and thus taxable to the Wife; support payments of $4,625 per month but to be paid only after 119 months, and to continue for the rest of her life; $50,000 attorneys' fees; and five annual payments of the *value* of 10,000 shares of C/U stock, value to be determined on January 10th of each year, starting in 1976. In addition, 100,000 shares of C/U stock was to be held in escrow for up to ten years, as security for the performance of the Husband's obligations, with 10,000 shares being freed of the escrow every year.

The Husband received the remainder of the marital estate, which included several valuable real properties; all of the other stocks and bonds then held; his personal items; and title to all 319,437 shares of C/U, 100,000 shares of which were previously pledged to secure certain notes, and 100,000 additional shares of which were subject to the escrow previously discussed. The Husband retained all other incidents of ownership in the escrow shares, including the right to receive dividends. Additionally, the Husband was ordered to assume and pay all of the existing obligations of the marital estate, including all mortageges, notes, and previously pledged gifts. Many of these debts arose as a result of the acquisition of numerous properties subsequent to the time the Husband initially filed this action.

The Husband's only disagreement with the award concerns the following items: the cash payment of $75,000; the attorneys' fees award of $50,000; the cash payments of the value of 10,000 shares of C/U stock; and the escrow account restriction on the 100,000 shares of C/U. He contends that these items throw the award heavily out of balance in favor of the Wife, and further creates a severe cash flow problem, inasmuch as there is little available cash in the estate, and com-

plete liquidation of all C/U stock to pay these amounts would cause a capital gains tax of $962,000 to be imposed on his share of the estate.

Using the figures relied on in the Husband's brief, the following table represents the various assets of the marital estate:

*Total Assets*

|  |  |
|---|---:|
| Owned by Wife | $ 54,116 |
| Owned by Husband | 3,814,300 |
| Total debts owed | (1,029,600) |
| Owned jointly | 375,000 |
| | |
| Net Estate | $3,213,816 |

The Husband claims that the Wife was awarded 69.2% of the net marital estate. He arrives at this figure as follows:

|  | *Assets Awarded to Wife* | *Assets Awarded to Husband* |
|---|---:|---:|
| Owned by Wife | 54,116 | 3,814,300 |
| Owned by Husband Less Debts |  | (1,029,600) |
| Owned Jointly | 375,000 |  |
|  |  |  |
| Sub total | 429,116 | 2,784,700 |
| Transferred by Decree: |  |  |
| Cash: 119 months at $2100/mo. | 249,900 | (249,900) |
| Cash: 119 months at $1666/mo. | 198,254 | (198,254) |
| Cash: Rest of life at $4,625/mo. | 131,720 | (131,720) |
| 50,000 C/U shares at $8.50/share | 425,000 | (425,000) |
| Wife's attorneys' fees | 50,000 | ( 50,000) |
| Lump sum award | 75,000 | ( 75,000) |
| Capital gains tax due on liquidation of stock to pay cash awards |  | (962,000) |
|  |  |  |
| Fair Value After Taxes | $1,558,990 | $ 692,826 |
| Per Cent of Net Assets | 69.2% | 30.8% |

We do not agree that the above represents an accurate picture of the status of the parties following the decree. First of all, there is no requirement that *any* of the 319,437 shares of C/U stock be liquidated, and in fact, 200,000 shares are not available for sale even if the Husband should desire to do so. Thus, the $962,000 deduction in the above table is not proper. This is not to say that the tax consequences are to be ignored. The issue the Husband raises concerns a very real problem of cash flow, and will be discussed below. But where there is no requirement that the shares actually be transferred, and where the decree can be satisfied without such a mandatory transfer, there is no assurance that any such capital gains tax will ever have to be paid, and the inclusion of such a speculative obligation in the debts assumed by the Husband is not proper (e.g., earnings from the assets may be sufficient in themselves to satisfy the decree, in which case the shares may never be sold, and no tax will ever be paid). Without this deduction, the Husband's assets total at least $1,654,826.

We also believe that one further adjustment is necessary to accurately reflect the division of the marital estate as of the date of entry of the decree. The Wife does not receive all of these cash payments at one time, but rather receives an annuity for a certain period. It is well established that the present value of an annuity is less than the total face amount of all payments that are eventually received by the Wife pursuant thereto. Under the decree the Husband is not required to liquidate a large amount of his stock in order to immediately pay over the total amount of the cash settlement, but rather he is permitted to retain the assets and use the return generated therefrom to satisfy the obligation over a longer period of time. The more proper way to determine the value of the assets transferred to the Wife is to consider the present value of the given annuity, not the total of all future payments. The Husband does not dispute the fact that the present value of these future payments, when using the Internal Revenue

Service Tables for valuing annuities for Federal Estate Tax purposes (6% discount rate), is as follows:

| | Total Payments: | Present Value: |
|---|---|---|
| Cash payments within six months after decree | 75,000 | 73,861 |
| Periodic payments of $2,100 each for 119 months certain | 250,000 | 189,347 |
| Support payments of $1,666 per month for 119 months or for Wife's life, whichever sooner expires | 198,254 | 150,215 |
| Support payments, commencing 120 months after the decree is entered, in the amount of $4,625 per month for Wife's life (based on life expectancy of 12.29 years, or 147.48 months from decree) | 131,720 | 66,435 |
| Fair market value of 10,000 shares of College/University Corp. stock of January 2nd of each of five successive years commencing in 1976 (at $8.50/share) | 425,000 | 358,054 |
| Totals | $1,079,974 | $ 837,912 |

Thus, the Wife's total award before taxes, as figured by the Husband's brief, is overstated by $242,062 ($1,079,974 minus $837,912) and the Husband's total is understated by the like amount. When all of the new figures are substituted, including the disallowance of the Husband's tax computation, the Wife's total award becomes $1,316,928, and the Husband's total award becomes $1,896,888, or 41% for the Wife and 59% for the Husband. Clearly the trial court judge did not abuse his discretion.[1] *Hibbard* v. *Hibbard* (1974), 161 Ind. App. 422, 315 N.E.2d 731.

Having decided that the actual division of the property is not improper, we next turn to the question of whether the

1. We express no opinion as to whether the Husband's original figures would have supported such a finding.

cash flow problem is sufficiently severe so as to allow us to say that the trial court judge abused his discretion, that is made an erroneous conclusion and judgment, one clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Elder* v. *City of Jeffersonville* (1975), 164 Ind. App. 422, 329 N.E.2d 654, 657; *Weiss* v. *Weiss* (1974), 159 Ind. App. 231, 306 N.E.2d 120, 125; *Hibbard* v. *Hibbard, supra.*

An analysis of the Husband's minimum cash flow needs for the next five years reveals the following:

*1 Year:*

| | |
|---|---:|
| Annual Estimated Interest on Debts | $ 65,000 |
| Wife's Attorneys' Fees | 50,000 |
| Wife's Cash Award | ˙75,000 |
| Support and Maintenance to Wife | 45,192 |
| Total | $235,192 |

*2nd, 3rd, 4th and 5th Years:*

| | |
|---|---:|
| Annual Estimated Interest on Debts | $ 65,000 |
| Support and Maintenance to Wife | 45,192 |
| Cash Value of 10,000 Shares of College/ University Corp. (value per share to be determined on January 10th of each year) | "?" |
| Total | $110,192 |

While the Husband's salary income may be in some jeopardy because he is past the usual retirement age and serves only under a renewable one-year contract at the pleasure of the Board of Directors of C/U, it is not unreasonable to assume that said income will continue at least through the most burdensome period of the payment schedule. Projected income for the next several years is as follows:

| | |
|---|---:|
| Salary | $ 60,000 |
| Potential Dividends on C/U Stock | 52,000 |
| Possible Income from Oil Ventures | 15,000 |
| Sale of Columbus, Ind., Property | 40,000 |
| | $167,000 |

It is readily apparent that outside of the first year lump-sum cash awards, and the five annual installment payments of the value of the 10,000 shares of stock, income is more than sufficient to meet current obligations. It is conceded that income the first year is not sufficient to meet all of the obligations under the decree. However, we know of no rule that requires such awards to be paid out of income only. We understand the gist of the Husband's argument to be that the cash awards are so excessive that he is forced to liquidate great amounts of C/U stock, and thereby incur a large capital gains tax, which would unnecessarily reduce the total marital estate. Likewise, the Husband contends that the payments of the value of 10,000 shares of stock would, using the present value of the stock, require raising an additional $85,000 during each of the next five years, and that too would require the liquidation of C/U stock with the same undesirable consequences. The Husband projects a minimum five year short fall of $218,192, not including his own living expenses or income taxes.

We are unable to say that the requirements under the decree are so burdensome that they amount to an abuse of discretion.

We first note that a good deal of the interest expense owed by the Husband each year is the result of the debts incurred by the Husband after he filed the divorce action. If he would liquidate some of the real estate assets he has recently purchased, he would receive additional cash income and simultaneously lower his interest payment obligations. There is no evidence that such liquidation would have any adverse tax impact such as would admittedly occur were he to liquidate the C/U stock. Were we to allow the Husband to invest all of his assets in non-income producing residential properties, and then plead poverty because of inadequate cash flow, we would only be condoning the very actions the trial court sought to prevent when it ordered an escrow account be established to guarantee and safeguard the future payments owed to the Wife.

We also note that the C/U stock is not the only asset awarded to the Husband from which he may be able to obtain cash so as to meet the requirements of the decree. Assets with a gross value of over one million dollars were also awarded to him. Several of these are encumbered and would produce little or no cash were they disposed of, but several others could be converted to cash, most notably the rather large stock and bond portfolio. While it is true that the Husband was made solely liable for marital debts in excess of one million dollars, a substantial portion of that debt load is secured by 100,000 shares of C/U stock, and not by these other assets. While in a proper case we may be reluctant to require the Husband to dispose of C/U stock because of the tax consequences and the selling restrictions, those problems are not presented here with regard to many of the other assets. With *net* assets of almost $1.9 million, we simply cannot believe that the Husband would be unable to raise an additional $220,000 over the next five years with some prudent liquidation of his wide variety of assets.

We also note that the cash flow shortfall anticipated by the Husband presupposes that the 10,000 shares of C/U stock will remain at the present selling price of $8.50/share. Should the price decline in the future, the Husband's burden will be lightened considerably. Should the price rise in the future, it is only plausible to assume that any substantial rise will coincide with an increase in dividend income from all 319,437 shares. Of course, the Husband always has the option of liquidating a portion of the shares, and while more than 10,000 shares may have to be sold in order to realize the cash equivalent of the value of 10,000 shares, we do not believe the amount needed to be sold would be so large as to endanger the Husband's position as a substantial stockholder.

Finally, we must recognize that the trial court in actuality had the best interests of the Husband in mind while formulating his decree. Certainly the easier and more natural thing to do in dividing a marital estate such as the one in this case

would be to award a large block of C/U shares directly to the Wife. The bases for such an award would be the more traditional formula of simply dividing the property as equitably as possible between the parties. In this case, the trial court decided that the long-term interests of the parties would be better served if the Husband were allowed to keep the C/U stock, but then pay a substantial cash award over time. In this way the transfer restrictions would not be a problem, the adverse tax consequences could be avoided, and the Husband would retain his voting control over all 319,437 shares of stock.

We believe this to be an equitable solution. The Husband cannot expect to keep all of the marital assets. His Wife had constantly entertained his business associates, had worked and helped support him during his business collapse in the Depression era, and indeed had enable the Husband to pay off the debt incurred from the initial purchase of C/U stock by means of her family inheritance. Considering all of the above, and the fact that the Husband received the bulk of the marital estate, we can find no abuse of discretion in the payments ordered, and indeed believe the decree exhibited and unusually wise division of property, even though the Husband may be forced to liquidate a small portion of the property awarded to him in order to keep his major stock asset intact. We hold that the award was proper.

The trial court decree is in harmony with the accepted method for dividing a marital estate. Since our opinion in *Bahre* v. *Bahre* (1962), 133 Ind. App. 567, 181 N.E.2d 639, we have shunned hard and fast rules while embracing the approaching of investigating and considering certain factors in the division of an estate.

These factors include the existing property rights of the parties; the amount and source of the property owned by the husband; the financial condition and income of the parties, including the husband's ability to earn money; the extent, if any, to which the industry and

economy of the wife has contributed to the accumulation of the husband's property; the separate estate of the wife.[2]

Finally, the Husband challenges the trial court's award of $50,000 attorneys' fees to the Wife, claiming first, that the hearing held pursuant to the decree to determine the appropriate amount of the award constituted a reopening of the evidence and therefore an abuse of discretion, and second, that the award was too high, since the Wife's attorneys admitted that their normal hourly rate would justify a fee of only $24,000.

In *Northrup* v. *Northrup* (1972), 154 Ind. App. 469, 290 N.E.2d 501, this court said,

"Finallly, appellant contends that there is no evidence to support the award of $500 in additional attorney's fees. While we can find no evidence in the record before us in support of such award, the law is well settled that in a divorce action the trial court may take judicial notice of what a reasonable attorney's fee would be. The award of the trial court as to attorneys' fees will be disturbed on appeal only where a clear abuse of discretion is shown. *McDaniel* v. *McDaniel* (1964), 245 Ind. 551, 562, 201 N.E.2d 215; *Dunn* v. *Deitschel* (1930), 204 Ind. 269, 169 N.E. 529; *Hardiman* v. *Hardiman* (1972), [152] Ind. App. [675], 284 N.E.2d 820; *Mathews* v. *Mathews* (1972), [151] Ind. App. [70], 278 N.E.2d 325; *Stigall* v. *Stigall* (1972), [151] Ind. App. [26], 277 N.E.2d 802."

It is evident that the trial courts have broad discretion in awarding or denying attorneys' fees in divorce actions. *DeLong* v. *DeLong* (1974), 161 Ind. App. 275, 315 N.E.2d 412. This is so, even though no evidence is heard on the matter. *Cox* v. *Cox* (1975), 163 Ind. App. 172, 322 N.E.2d 395; *Hibbard* v. *Hibbard* (1974), 161 Ind. App. 422, 315 N.E.2d 731. Therefore, even were we to hold that the hearing was improper, that still would not support the Husband's claim based on insufficiency of the evidence.

2. A trial court is now mandated by IC 1971, 31-1-11.5-11 (Burns Code Ed. Supp. 1975) to consider some of the above factors as well as some others set forth in the statute.

It is also clear that the hearing to determine the proper amount of attorneys' fees was proper in this case. Here the trial court's judgment was not final since it reserved a further question (i.e., the proper amount of attorneys' fees) for future determination. *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N.E.2d 669, *Farley* v. *Farley* (1973), 157 Ind. App. 385, 300 N.E.2d 375. Since there is no requirement that the issue of the proper amount of attorneys' fees be determined only on the basis of evidence forthcoming at trial, it surely must be proper for the trial court to withhold final judgment as to this issue until the substantive proceedings have concluded and an intelligent estimate of the time requirements involved in trying the suit can be arrived at. Where the decree explicitly states that such an issue must still be determined, this court has held that a subsequent entry of an award of attorneys' fees is proper. *Farley* v. *Farley, supra.* In *Farley,* the court upheld such an award even though specific reservation was contained in a separate property settlement agreement that was incorporated within the decree only by reference.

Likewise, we hold that there was no abuse of discretion as to the amount of attorneys' fees awarded. The evidence heard at the hearing was conflicting. One witness testified that a reasonable fee would be between $55,000 and $60,000, which, upon reflection, he thought might be low. Another witness testified that a reasonable fee would be $100,000. While the Wife's attorney did testify that a fee based solely on his usual hourly rate would justify only $24,000, there is no requirement that only an hourly rate be considered. Other factors have traditionally been considered when determining a proper fee, including the size of the marital estate, the length of time necessary to obtain the desired result, and the possibility of the need for an appeal. Appellate fees are also a proper element of an award for attorneys' fees. *DeLong* v. *DeLong, supra.* Considering all of these factors, and the evidence presented at the special hear-

ing, it does not appear that the award is excessive. Even if the amount awarded does not correspond to the evidence heard by the trial court, that does not mean that an abuse of discretion has been shown. As long as the amount is "fair and equitable under the circumstances and the evidence," this court will not disturb the award. *DeLong* v. *DeLong, supra.*

No abuse of discretion has been shown.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 349 N.E.2d 707.