In re The Marriage of Haroon M. QAZI, Appellant (Petitioner Below),

v.

Sabina QAZI, Appellee (Respondent Below).

No. 29A02–8802–CV–00060.

Court of Appeals of Indiana, Second District.

Nov. 30, 1989.

Michael A. Howard, Pearce & Howard, Noblesville, for appellant.

James R. Fisher, Ice Miller Donadio & Ryan, Indianapolis, for appellee.

SULLIVAN, Judge.

Haroon Qazi (Dr. Qazi) appeals a trial court determination, following remand, regarding the value of certain pension plans. Previously, on appeal of the dissolution decree, the reviewing court determined the plans to be part of the marital estate.

We affirm.

Dissolution was granted to Dr. Qazi and Connie Qazi on July 17, 1984. The trial court's order excluded three pension plans from the marital estate. Nevertheless, one of the plans, belonging to Mrs. Qazi, was awarded to her; the remaining two, of substantially greater value, belonged to Dr. Qazi and were awarded to him. Mrs. Qazi appealed that ruling. On appeal our Third District held that the pension plans were presently vested assets and therefore property which constituted a part of the marital estate. The Third District reversed and remanded, "for reconsideration of the marital estate and any redistribution occasioned thereby." *Qazi v. Qazi* (1986) 3d Dist.Ind.

App., 492 N.E.2d 692, 694, *trans. denied* (1987) Ind., 503 N.E.2d 894.

On remand, the trial court valued the three plans at $812,500. The court gave Dr. Qazi his two plans, valued at $762,500; Mrs. Qazi received her plan, valued at $50,-000 and a case award of $525,000 to be paid over a ten year period. Following the remand hearing, Dr. Qazi instituted an appeal, asserting various errors which we rephrase as follows:

1. Whether the trial court on remand erred in failing to consider a federal income tax liability which was in dispute at the time of the original hearing but determined to be $150,000 on remand;[1]

2. Whether the trial court on remand abused its discretion in using differing valuation dates when valuing the three pension plans;

3. Whether the trial court on remand erred in failing to consider the potential tax consequences for pre-retirement liquidation of Dr. Qazi's pension plans;

4. Whether the trial court on remand abused its discretion in failing to distribute the pension plans "in kind," via a Qualified Domestic Relations Order;

5. Whether the trial court on remand abused its discretion in ordering Dr. Qazi to bear Mrs. Qazi's attorney's fees from the prior appeal; and

6. Whether the cumulative effect of the order of the trial court on remand constituted an abuse of discretion.

I

■ Dr. Qazi argues that the trial court on remand erred in failing to consider a federal income tax liability of $150,000. Dr. Qazi was in the process of disputing this tax liability with the Internal Revenue Service (I.R.S.) at the time of the original dissolution hearing and therefore the exact amount of the liability could not be determined. Dr. Qazi and his accountant both testified at the original hearing concerning those issues upon which Dr. Qazi and the I.R.S. had agreed and those which were still in dispute. The testimony at the original trial was that the tax liability was pri-

marily the result of disallowance of a tax shelter (investment in a book), failure to report interest income, and disallowance of depreciation and investment tax credit from a limited partnership.

In paragraph 12 of the dissolution decree, the trial court ordered:

"Husband shall hold Wife harmless on all tax liabilities, on any of the transactions on the limited partnerships or corporation taxes heretofore filed severally or jointly, and the Husband shall receive all the interests in the limited partnerships as well as any liabilities thereon." Original Record at 14.

We interpret the court's order as casting the liability for taxes in general upon the Husband.

Subsequent to the entry of this order, Dr. Qazi filed a Motion to Correct Errors alleging that the court failed to consider the disputed income tax liability which, by that time, I.R.S. had determined to be $106,000. The trial court denied Dr. Qazi's motion with respect to his allegation concerning taxes. Mrs. Qazi then instituted her appeal of the trial court's ruling concerning the treatment of the parties' pension plans. *See Qazi, supra,* 492 N.E.2d 692. Dr. Qazi, however, did not cross-appeal on the denial of his Motion to Correct Errors concerning taxes. The only issue which Dr. Qazi presented in his brief on the first appeal was as follows:

"The Petitioner–Appellee [Dr. Qazi] respectfully submits that the only issue for review is whether or not the Respondent–Appellant [Mrs. Qazi] has demonstrated any abuse of discretion on the part of the trial court in the division of the assets in the dissolution proceeding." (Brief of Appellee at 1, *Qazi v. Qazi, supra* ).

Based on the foregoing facts, we hold that Dr. Qazi has waived his right to challenge the trial court's original allocation of taxes. The liability for taxes was cast to Dr. Qazi and the trial court denied Dr. Qazi's Motion to Correct Errors with respect to this issue. Dr. Qazi could have chal-

---

1. This tax liability was unrelated to the matter of the pension plans.

lenged the court's ruling at the time of the first appeal but chose not to do so. There is no issue before us to now modify the divorce decree with respect to this tax liability.

## II

Dr. Qazi alleges error in the trial court's use of the remand hearing date for the valuation of his pension plans, while using the distribution date of September, 1985, in valuing Mrs. Qazi's plan.

The original trial court determined that the parties owned three pension plans. Two, a Defined Benefit Plan and a Money Purchase Plan, were in Dr. Qazi's name. The other belonged to Mrs. Qazi. The original decree listed the values as $415,277 for Dr. Qazi's two plans and $41,000 for Mrs. Qazi's. In response to a Motion to Correct Errors filed by Dr. Qazi, the original trial court deleted the plans and their values from the marital estate and entered a new paragraph simply awarding each party his or her own plan(s).

Mrs. Qazi appealed that decision. On appeal the plans were held to be part of the marital estate and the case was remanded for "reconsideration of the marital estate and any redistribution occasioned thereby." *Qazi, supra,* 492 N.E.2d at 694. The Third District further instructed that "in placing a value on the plans, the present value should be ascertained." *Id.*

Evidence presented on remand indicated fluctuations in value of the various plans between the dissolution hearing dates during March and April of 1984 and the remand hearing. In November of 1983, Dr. Qazi's Defined Benefit Plan had been valued at $253,825 and his Money Purchase Plan was valued at $244,722. Mrs. Qazi's Retirement Fund was valued at $50,804 on the date of distribution to her in September, 1985.

Testimony in August, 1987, by Warren Steinborn, Dr. Qazi's retirement plan consultant, put the value of the Defined Benefit Plan at $308,648. On cross-examination, Mr. Steinborn conceded that the value as of the end of July, 1987, could be placed at $312,500. With regard to the Money Pur-chase Plan, Mr. Steinborn testified that the value as of November 30, 1986, was $441,-593. Norman Gurwitz, one of Dr. Qazi's financial advisors, testified on cross that "counting accrued but unpaid interest" from a loan to Dr. Qazi the value of the Money Purchase Plan would be approximately $450,000. Remand Record at 392. The Retirement Fund awarded to Mrs. Qazi had been depleted entirely as of the date of the remand hearing.

After considering the evidence, the trial court made the following determination regarding the value of the pensions:

"4. The present approximate value of the plans, exclusive of additions or contributions made to the plans since the filing of the dissolution petition are as follows:

'Money Purchase Plan' of Haroon Qazi —$450,000

'Deferred Benefit Plan' of Haroon Qazi —$312,500

'Money Purchase Plan' of Sabina Qazi —$50,000"

Remand Record at 84.

This order was entered on October 29, 1987. Dr. Qazi then filed a Motion to Correct Errors alleging that, although the last evidentiary hearing on remand had been held on October 5, 1987, the trial court erred in failing to consider the stock market crash of October 19, 1987, and in not changing the valuations in the order to reflect this. The trial court held a hearing to consider the motion on February 5, 1988. The court denied Dr. Qazi's Motion to Correct Errors.

Dr. Qazi now argues that the trial court's valuation of the respective pension plans was an abuse of discretion. He argues that the trial court should have picked *either* a date in 1984 at the time of the dissolution hearing and decree or a date after the October 5, 1987, remand hearing in order to reflect the drop in the stock market.

Dr. Qazi cites *Eyler v. Eyler* (1986) Ind., 492 N.E.2d 1071, for the proposition that the trial court has broad discretion in determining the date to value marital assets. In

*Eyler,* our Supreme Court held that for purposes of determining the date to value marital property, "[t]he trial court has discretion in selecting any date between the date of filing of the dissolution petition and the hearing for purposes of valuation of a marital asset." *Id.* at 1074. *Eyler* indicates that the last date the trial court may choose for valuation of a marital asset is the final hearing. However, *Eyler* did not address a situation such as the present one in which the case has been remanded to the trial court for purposes of valuing and distributing a marital asset. It may be that *Eyler* could be read broadly to allow the trial court to choose a valuation date up to and including the date of the remand hearing, at least for purposes of the asset which the court has been instructed to consider.

However, the issue of how to interpret *Eyler* in a case involving a remand hearing has not been squarely presented by Dr. Qazi. Dr. Qazi does not argue that the trial court was confined by the *Eyler* decision to use the date of the dissolution hearing. He merely asserts that it may have been more equitable to do so. However, he suggests in the alternative that the trial court may properly have chosen a valuation date after the drop in the stock market. Had the trial court followed Dr. Qazi's suggestion, the valuation date not only would have been after the dissolution hearing, it would have been after the *remand* hearing.

We do not decide whether *Eyler* holds that in all possible situations the last permissible date for asset evaluation is the date or dates upon which evidence is heard in the dissolution proceeding prior to entry of a dissolution decree. Dr. Qazi has not only not asked us to do so, he has recommended an evaluation date which would not be within such a construction of the *Eyler* case. Accordingly, he has not demonstrated reversible error with regard to the evaluation dates utilized by the court upon remand.

■ We therefore confine our review to whether the trial court abused its discretion in valuing Dr. Qazi's assets as of the date of the remand hearing in 1987 while valuing Mrs. Qazi's asset as of the date of distribution to her in 1985. We discern no abuse of discretion in the valuation of Dr. Qazi's assets. The trial court's order concerning the valuation of Dr. Qazi's pension plans is based upon competent evidence presented during the remand hearings primarily by Dr. Qazi's own consultants.

Dr. Qazi's argument regarding the valuation date chosen for Mrs. Qazi's pension plan is more troubling. He implies that the court should have taken into account some appreciation in Mrs. Qazi's plan between distribution to her in 1985 and the remand hearing. However, Dr. Qazi presented no evidence as to what such appreciation might have been. In fact, the evidence as to the amount Mrs. Qazi actually received upon distribution was presented through Dr. Qazi's own witness.

Apparently, Dr. Qazi made no complaint with respect to the valuation dates and amounts until after the stock market dropped which was after the remand hearings had been completed but before the court made its order. Dr. Qazi may not present to the trial court evidence concerning valuation and then later successfully argue that the court abused its discretion by choosing to use the valuations presented.

Therefore, we hold that the trial court did not abuse its discretion in choosing to value the assets as it did.

### III

Dr. Qazi asserts error in the trial court's award of two pension plans to him, counterbalancing these with periodic cash payments to Mrs. Qazi. His contention is that the amount of his required payments to Mrs. Qazi exceeds the value of the plans, constituting an impermissible award of future income. Dr. Qazi takes this position based upon his belief that the trial court was required to consider the tax consequences of liquidating the plans prior to Dr. Qazi's reaching age 59½. Dr. Qazi's argument is that because the tax consequences were not considered, they were implicitly allocated to him, thereby lower-

ing the value of the plans to him. There-, fore, he reasons, his periodic payments to Mrs. Qazi impermissibly reach future income. He is incorrect.

■ The tax consequences associated with possible liquidation of Dr. Qazi's pension plans are speculative in nature and were properly disregarded. It has been held that where a trial court's distribution does not require liquidation of pension or retirement plans, any potential tax consequences of early liquidation are speculative in nature and should not be considered in making a distribution. *See Harlan v. Harlan* (1989) 2d Dist.Ind.App., 544 N.E.2d 553, *reh. pending; Porter v. Porter* (1988) 1st Dist.Ind.App., 526 N.E.2d 219, *trans. denied; Qazi, supra,* 492 N.E.2d 692; *Wright v. Wright* (1984) 1st Dist.Ind.App., 471 N.E.2d 1240, *trans. denied; Burkhart v. Burkhart* (1976) 169 Ind.App. 588, 349 N.E.2d 707; *In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 131 Cal.Rptr. 873, 552 P.2d 1169.[2] In this case, the trial court clearly did not require liquidation of the plans and, in fact, carefully fashioned a periodic payment schedule to avoid just such an occurrence.

■ Dr. Qazi's arguments are reminiscent of those made and rejected in *Wright, supra,* 471 N.E.2d 1240, 1244–1245:

"Husband goes on to argue that it was error for the trial court to distribute to him his pension and profit sharing plan without taking into consideration the tax consequences thereof. Finding No. 34

states that the court specifically considered the potential tax liability and determined that it was 'speculative' and thus incapable of valuation.

Here, the husband was ordered to pay wife $159,373.00 to be paid in installments of $39,373.00 the first year and $24,000.00 per year in the five succeeding years. The evidence before the court was that the parties had a net marital estate in excess of $970,000, over $300,000 of which was in stocks and bonds which were awarded to the husband in the final decree. Husband received over $700,000 in assets pursuant to the decree and the court found him to have an annual income ranging from $135,000 to $195,000 per year.

While husband may or may not have 'cashed in' his pension plan, the court did not require him to do so by the terms of the decree. In addition, husband was clearly awarded sufficient assets with which to raise the first installment without invading his pension. Whether husband decides to cash in his pension and incur tax liability is purely a matter of choice. Since it is entirely reasonable that husband may not do so, the trial court was correct in considering the tax liability 'too speculative' for valuation."

In the instant case, Dr. Qazi was ordered to pay $525,000 to Mrs. Qazi over a ten-year period, at eight percent per annum. The court fashioned the following payment schedule:

| Payment Date | Principal | Interest | | | Total Due |
|---|---|---|---|---|---|
| 11/1/87 | $35,000 | 0% | | | $ 35,000 |
| 7/17/88 | $35,000 | 8% | = | $ 2,800 | $ 37,800 |
| 7/17/89 | $35,000 | 16% | = | $ 5,600 | $ 40,600 |
| 7/17/90 | $60,000 | 24% | = | $14,440 | $ 74,400 |
| 7/17/91 | $60,000 | 32% | = | $19,200 | $ 79,200 |
| 7/17/92 | $60,000 | 40% | = | $24,000 | $ 84,000 |
| 7/17/93 | $60,000 | 48% | = | $28,800 | $ 88,800 |
| 7/17/94 | $60,000 | 56% | = | $33,600 | $ 93,600 |

2. We note that I.C. 31–1–11.5–11.1 (Burns Code Ed.Supp.1988) states:

"The court, in determining what is just and reasonable in dividing property under section 11 of this chapter, shall consider the tax consequences of the property disposition with respect to the present and future economic circumstances of each party."

We interpreted this statute in *Harlan v. Harlan, supra,* 544 N.E.2d 553, as affirming the rationale of *Porter, Wright,* and *Burkhart* that because liquidation is not required, the claimed tax liability was not actually incurred by the disposition. The inference is that only tax consequences necessarily arising from the plan of distribution are to be taken into account.

| Payment Date | Principal | Interest | | | Total Due |
|---|---|---|---|---|---|
| 7/17/95 | $60,000 | 64% | = | $38,400 | $ 98,400 |
| 7/17/96 | $60,000 | 72% | = | $43,200 | $103,200 |

Remand Record at 86.

Dr. Qazi received pension plans valued at $762,500. He received numerous other assets in the 1984 proceeding including a residence valued then at $325,000, an office building valued then at $178,400, accounts receivable valued then at $100,368, an interest in a Signature Inn valued then at $20,000, miscellaneous items valued then at approximately $120,000, and limited partnerships of "unascertainable" value. Orig. Record at 12–13. Dr. Qazi has income which was determined in 1984 to be "over $200,000 per year for the past several years, and over $160,000 for the past 5 years." Orig. Record at 9. There was testimony at the remand hearing that Dr. Qazi received income in 1985 of $424,783, in 1986 of $590,000, and in 1987 of $222,000.

Thus, a number of options were and are available to Dr. Qazi to enable him to meet his court-ordered payment obligations. These options could include, but are not limited to, liquidation of his pension plans. Clearly the terms of the payment schedule, considered in light of the assets he received, do not dictate this result. Dr. Qazi may choose to meet his legal obligation from his earnings, as he would any other debt, but again he is not required to do so by the terms of the trial court order. The point is that Dr. Qazi was awarded sufficient assets to meet the payment schedule which the trial court fashioned. The *method* of payment is for Dr. Qazi to determine. There is absolutely no evidence that he is liquidating his pension plans, must liquidate them, or intends to liquidate them. Therefore, the tax consequences are purely speculative and must be disregarded. *Fonstein, supra,* 131 Cal.Rptr. 873, 552 P.2d 1169. It is true that to the extent that there ever would be tax consequences for pre-retirement liquidation, they are allocated to Dr. Qazi. However, the amount of taxes which he might incur are subject to a number of variables, "the variety of which makes impossible anything more than a speculative approximation of the potential tax liability." *Id.* 131 Cal.Rptr. at 881, 552 P.2d at 1177. Because the plans, the decision to retire and/or liquidate, and the variables affecting potential tax liability are all under Dr. Qazi's control, the allocation of any potential liability is appropriately placed with him. *Id.*

## IV

It is Dr. Qazi's position on appeal that he would have liked Mrs. Qazi to have been awarded a portion of the pension plans "in kind" via a Qualified Domestic Relations Order. He contends that "when such an equitable vehicle for division of an asset is available to a trial court [as a Qualified Domestic Relations Order] it is surely an abuse of discretion not to divide the asset in kind." Appellant's brief at 22–23. He cites no authority for this position, and indeed we have found none.

Dr. Qazi correctly points out that I.C. 31–1–11.5–11(b)(4) (Burns Code Ed.1987 and Supp.1989) authorizes a trial court to, among other things, divide assets such as pension plans "in kind" in a dissolution proceeding. He seems to read into the statute a duty on the part of the trial court to so divide the assets. Dr. Qazi compounds this error by his misinterpretation of the role of the Retirement Equity Act of 1984 vis-a-vis our dissolution statute. He states in his brief:

"Indiana Code 31–1–11.5–11(b)(4) gives the trial court the authority to divide pension plans under a qualified domestic relations order. In doing so, the trial court can divide pension funds 'in kind'." Appellant's brief at 21.

The Qualified Domestic Relations Order (QDRO) to which Dr. Qazi refers is authorized under the Retirement Equity Act of 1984 and provides, among other things, that benefits accruing from pension and retirement plans can be allocated to former spouses pursuant to a division of assets under a state domestic relations law. We need not discuss either the QDRO or the Retirement Equity Act at length, because I.C. 31–1–11.5–11, Indiana's domestic rela-

tions statute, also allows allocation of pension and retirement plans in kind by virtue of section (b)(4). The operative word here is "allows." For while the statute authorizes such a division, it does not require it. The only requirement that the statute puts upon a trial court is that its distribution be "just and reasonable." I.C. 31–1–11.5–11 (Burns Code Ed.1987 and Supp.1989).

■ A just and reasonable division of assets does not necessarily mean equal or even relatively equal. *Porter, supra,* 526 N.E.2d 219; *Wright, supra,* 471 N.E.2d 1240. A trial judge is afforded considerable discretion in dividing the marital estate. A property division pursuant to a divorce decree will only be overturned if it is clearly against the logic and effect of facts and circumstances before the court, or the reasonable, probable and actual deductions to be drawn therefrom. *Burkhart v. Burkhart* (1979) 169 Ind.App. 588, 349 N.E.2d 707.

■ The court may either divide assets, including pension and retirement plans, in kind or award them all to one spouse while requiring that spouse to pay "such sum, either in gross or in installments, as may be just and proper." *Wright, supra,* 471 N.E.2d at 1244. In determining what is just and reasonable, the trial court must consider the following factors:

"(1) The contribution of each spouse to the acquisition of the property, including the contribution of the spouse as homemaker;

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;

(3) The economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children;

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property;

(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties."
*Id.* at 1244.

In the present case, the court upon remand determined that the long term interests of the parties would be better served if Dr. Qazi were allowed to keep his pension plans and required to pay a cash award to Mrs. Qazi over time. This is similar to a decision made in *Burkhart, supra,* 349 N.E.2d 707. In that case the trial court allowed the husband to keep shares of stock (which carried transfer restrictions) but ordered that he pay his former wife a substantial cash award over time. The reviewing court held that it was not an abuse of discretion to so divide the property for several reasons, including the avoidance of tax liabilities, and the ability of the husband to maintain a large block of voting shares. *Burkhart, supra,* 349 N.E.2d 707.

■ The instant case is similar. As Dr. Qazi points out, a primary concern in the disposition of a retirement account would be the tax consequences of liquidating prior to retirement age. It is not unreasonable for the trial court to assume that allowing Dr. Qazi to keep his plans is one way to avoid that problem. But Dr. Qazi "cannot expect to keep all the marital assets." *Id.* at 714. The trial court on remand provided for a carefully scheduled cash payment to Dr. Qazi's ex-wife over time which avoided early liquidation of the plans as well as a large drain on Dr. Qazi's assets. We do not find this to be against the logic and facts before the court; there is no abuse of discretion with regard to this issue.

## V

Dr. Qazi contends that it was an abuse of discretion for the trial court upon remand to order him to pay Mrs. Qazi's attorney's fees for the prior appeal. We disagree.

I.C. 31–1–11.5–16 (Burns Code Ed.1987) authorizes a trial court to make an award of attorney's fees. This statute gives broad discretion to the trial court in awarding attorney's fees and such an award will not be reversed except upon a clear show-

ing of an abuse of that discretion. *See e.g., Luedke v. Luedke* (1985) Ind., 487 N.E.2d 133; *Olds v. Olds* (1988) 3d Dist.Ind.App., 531 N.E.2d 1219; *Chestnut v. Chestnut* (1986) 1st Dist.Ind.App., 499 N.E.2d 783; *Hunter v. Hunter* (1986) 4th Dist.Ind.App., 498 N.E.2d 1278. Husband has not made such a showing here.

■ Dr. Qazi bases his abuse of discretion claim on the facts that Mrs. Qazi was awarded a condominium, that she is employable although has been under-employed, and that she initiated the prior appeal. These are factors which the trial court may consider in determining with which party to place the burden of attorney's fees, but they are not the only factors the court may take into account. *Olds, supra*, 531 N.E.2d 1219.

Some other factors which a trial court may properly consider include the relative assets of both parties (*Svetich v. Svetich* (1981) 3d Dist. Ind.App., 425 N.E.2d 191); the relative ability of the parties to engage in gainful employment (*Planert v. Planert* (1985) 3d Dist. Ind.App., 478 N.E.2d 1251); and the superiority and availability of funds available to one party relative to the other (*Hunter, supra*, 498 N.E.2d 1278).

In the *Hunter* case, an order requiring the husband to pay wife's attorney's fees was allowed to stand even where husband's income had "decreased dramatically" between the initial hearing and trial. *Id.* at 1295. The award was upheld because there was evidence that the Husband's future earning potential was clearly superior to the Wife's. *Id.*

■ In the present case, there was evidence that Husband was a plastic surgeon earning anywhere from $160,000 to $590,000 per year, while the Wife had never worked outside the home and was currently being trained as a cosmetologist. There was evidence from the original hearing that Husband was awarded assets valued at $743,768 (excluding the pension plans and limited partnerships), while Wife was awarded assets worth $259,000 (excluding the pension plans). The remand proceeding resulted in awards to Dr. Qazi of pension plans valued at $762,500 and to Mrs. Qazi

of a pension plan valued at $50,000 plus a cash award of $525,000 to be paid over ten years. From these facts it does not appear that the trial court abused its discretion in ordering Husband to bear the cost of attorney's fees for the prior appeal.

## VI

Dr. Qazi argues that the cumulative effect of the trial court's order shows an abuse of discretion. Dr. Qazi then submits eleven ways in which the court could have ruled in his favor but instead ruled in favor of Mrs. Qazi. We are not persuaded by this argument.

In a dissolution proceeding, the trial court is required to effect a just and reasonable disposition of the marital property. I.C. 31-1-11.5-11. The actual division of the property is left to the discretion of the court, and we will only reverse if that discretion is abused. *Porter v. Porter, supra*, 526 N.E.2d at 222.

The trial court is required, under the relevant statute, to consider the economic circumstances of each spouse and the earnings or earning ability of the parties. I.C. 31-1-11.5-11(c)(3) and (5). The trial court is not required to divide the property equally between the parties. *Luedke v. Luedke* (1985) Ind., 487 N.E.2d 133; *Moore v. Moore* (1985) 3d Dist. Ind.App., 482 N.E.2d 1176; *In re Marriage of Church* (1981) 2d Dist. Ind.App., 424 N.E.2d 1078, *trans. denied.*

In this case, the trial court made the following Findings of Fact at the original proceeding:

"19. The economic circumstances of the parties is such that there is a tremendous disparity of earning ability between the parties....

23. That no matter how the property is divided, there will be a substantial difference in the parties' economic condition, in that the Husband will be able to continue to acquire and produce an ever-larger estate through his income stream, whereas the Wife will not be able to do so, depleting her assets as she lives." Original Record at 10.

The court upon remand specifically adopted these findings because they were

not challenged by either party. Having found that Mrs. Qazi in this case was in an economically inferior position compared to Dr. Qazi, the court did not abuse its discretion in making distribution of the marital assets and by awarding Mrs. Qazi her appellate attorney's fees. Whether viewed individually or cumulatively, Dr. Qazi's allegations do not convince us that the trial court's order constituted an abuse of discretion.

The judgment is affirmed.

BUCHANAN, J., concurs.

HOFFMAN, J., concurs in result as to issues I and II with opinion; dissents as to issue III with opinion; and concurs as to issues IV, V and VI.

HOFFMAN, Judge, concurring and dissenting.

With respect to the first appellate contention raised by Dr. Qazi, I concur in the result reached by the majority. Dr. Qazi waived any error in the trial court's failure on remand to consider the tax shelter liability, because the doctor stipulated that the sole issue on remand was the distribution of the pension plans.

I also concur in the result reached by the majority on the second issue: whether the trial court erred in using the remand hearing date for the valuation of Dr. Qazi's pension plans. I agree that a finding of *reversible* error may not be predicated upon the court's use of the remand hearing date for valuation, because that date fell within the range of dates suggested by Dr. Qazi as appropriate. Nonetheless, the court erred when it selected the remand hearing date for purposes of valuation.

When the instant cause was remanded with instructions to include the pension plans in the marital estate, this Court offered the following guidance:

"In placing a value on the plans, the present value should be ascertained. *Libunao v. Libunao* (1979), 180 Ind.App. 242, 388 N.E.2d 574, *on petition for reh.*, 180 Ind.App. 242, 390 N.E.2d 695." *Qazi v. Qazi* (1986), Ind.App., 492 N.E.2d 692, 694.

The phrase "present value" was not intended to convey the meaning of "value as of this date"; rather, the phrase was employed to preclude redistribution of the marital estate based upon the future value of the plans. Such a reading of *Qazi* is confirmed by examining the authority cited by the Court, namely *Libunao v. Libunao* (1979), 180 Ind.App. 242, 388 N.E.2d 574.

*Libunao* was an appeal from a dissolution of marriage proceeding, in which the trial court divided such marital assets as a pension fund, a profit sharing fund and a Keough plan. Upon reviewing the disposition of assets, this Court stated:

"[W]e hold that the trial court may *consider* the future value of an asset, but the final distribution must be just and equitable in light of the present vested interest of the particular fund." *Id.* at 246–247, 388 N.E.2d at 576.

In placing a value on Dr. Qazi's pension plans, the trial court could have selected for purposes of valuation any date between the date of filing of the dissolution petition and the date of the dissolution hearing. *Eyler v. Eyler* (1986), Ind., 492 N.E.2d 1071, 1074. The lower court's discretion was not expanded by virtue of the fact that the valuation followed a reversal and remand. *Cf. Doughty v. State Dept. of Public Welfare* (1954), 233 Ind. 475, 121 N.E.2d 645 (Where an appellate tribunal finds a judgment was erroneous and reverses it, the parties must take their places in the trial court at the point where the error occurred and proceed to decision.). The court's use of the remand hearing date for the valuation of Dr. Qazi's pension plans was erroneous, but it does not provide grounds for reversal under the particular circumstances of this case.

I dissent from the majority's disposition of Issue III, concerning the potential tax consequences of early liquidation of the pension plans, for the reasons articulated in my dissenting opinion in *Harlan v. Harlan* (1989), Ind.App., 544 N.E.2d 553.