**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**LINDSEY A. GROSSNICKLE**
Bloom Gates & Whiteleather, LLP
Columbia City, Indiana

ATTORNEY FOR APPELLEE:

**WILLIAM A. RAMSEY**
Murphy Ice & Koeneman LLP
Fort Wayne, Indiana

FILED

Jul 30 2012, 9:15 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

BRUCE A. CRAIG,                              )
                                             )
    Appellant-Respondent,                    )
                                             )
       vs.                               )        No.  92A03-1112-DR-584
                                             )
CYNTHIA E. CRAIG,                            )
                                             )
    Appellee-Petitioner.                     )

APPEAL FROM THE WHITLEY CIRCUIT COURT
The Honorable James R. Heuer, Judge
Cause No. 92C01-1010-DR-707

**July 30, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

The trial court dissolved the marriage of Bruce A. Craig ("Husband") and Cynthia E. Craig ("Wife"). On appeal, Husband challenges the trial court's division of property. Husband raises four issues, which we restate as follows: (1) whether the trial court abused its discretion by not calculating and awarding to Husband the equity that he had in the marital residence before the marriage; (2) whether the trial court committed reversible error by awarding Wife fifty percent of the coverture portion of Husband's Dana pension; (3) whether the trial court committed reversible error by removing certain assets from the marital pot; and (4) whether the trial court abused its discretion by ordering Husband to pay a portion of Wife's attorney's fees.

We conclude that Husband has waived the first issue because he did not present evidence concerning the amount of equity that he had in the marital residence before the marriage. As to the second issue, we conclude that any error was harmless, because application of the coverture fraction formula results in an award of $0 to Wife. As to the third issue, we conclude that Husband invited the trial court's error by submitting a proposed property division that employed essentially the same methodology as that used by the trial court. Finally, we disagree with Husband's implication that Wife is voluntarily unemployed and find no abuse of discretion in the trial court's award of attorney's fees. Therefore, we affirm.

**Facts and Procedural History**

Prior to their marriage, Husband and Wife each owned a home. Around January 2002,

Husband and Wife began living together in Husband's home. After they became engaged, Wife sold her house. After their marriage on September 25, 2004, Husband and Wife continued to live in the home that had originally belonged to Husband. They had no children together, although each had children from previous marriages.

On October 15, 2010, Wife filed a petition for dissolution. After a failed attempt at mediation, the trial court held an evidentiary hearing on August 9, 2011. At that time, Wife had been working at Coupled Products (previously Dana Corporation) for nearly thirty-five years. However, in 2011, Wife's wage was cut from $13.83 per hour to $9.23 per hour. In addition, the cost of medical insurance was greatly increased. In June 2011, Coupled Products' employees went on strike. Since then, Wife had been receiving $200 a week from her union, and she received benefits at no extra cost. Wife has received notice that the company is planning to move operations to Mexico. Husband had also previously worked for Dana Corporation; however, in 2003, he started working for Nishikawa Standard. Although he had been laid off during 2008, throughout the marriage, he had typically earned more than Wife. For the 2010 tax year, Husband had earned about 69% of the household income.

Wife testified that the net gain from the sale of her residence was $9968.94. From this money, Wife paid about $1000 toward sewer hook-up for the marital residence and about $1895 toward central air conditioning for the marital residence. The remainder of the money was used to pay off her credit cards and for miscellaneous living expenses. The marital residence remained in Husband's name alone until the couple refinanced in 2008. Husband and Wife maintained separate checking accounts, but after the refinance, Wife started

3

depositing $200 per month in Husband's account to help pay the mortgage. Wife testified that money obtained through the refinance was used to pay off her credit cards and a loan on a lawnmower that Husband had purchased. Also in 2008, Husband and Wife built a garage and turned the back porch area into a living room. These improvements, which cost about $9000 to $10,000, were paid for from their tax refund and money from their individual bank accounts. In 2010, they installed a hot tub, which cost about $4000. They put about $2000 from their tax refund toward the hot tub. At the time of the hearing, the marital residence was valued at about $110,000, and the parties still owed $54,352 on the mortgage.

Husband testified that he made the payments for the mortgage; property taxes; home, auto, and medical insurance; utilities; and his car loan. Wife testified that she helped pay for the sewer bill, the cell phone bill, groceries, gifts for their children and grandchildren, vacations, her car loan, and her life insurance. Wife stated that she helped pay for additional expenses during the time when Husband was laid off. Wife testified that she used to get medical insurance through her employer, but a few years before the separation, the cost of that insurance increased greatly, so it was more affordable for her to be covered by the plan offered by Husband's employer. Wife also estimated that she did about seventy percent of the household chores.

On November 23, 2011, the trial court issued a dissolution decree, which included the following provisions concerning property division:

> 17. Each party shall receive his or her premarital personal property, investment assets, and pension assets as valued as of the date of this marriage.

> 18. The real estate is a jointly held asset. Each party has contributed to

4

the equity in the real estate.  The net value of the real estate is a marital asset to be divided equally.

19.  Subject to finding #17, there shall be an equal division of the net marital estate.

20.  The marital estate is valued and divided as follows.

| | ASSETS | TO HUSBAND | TO WIFE |
|---|---|---|---|
| A. | Real Estate … | $110,000.00 | |
| B. | Personal Property Accumulated during marriage | $36,048.00 | $9,571.00 |
| C. | Fort Financial IRA (Marital Portion) | $401.00 | |
| D. | Nishiwak[a]/Enveritus | $3,868.00 | |
| E. | Modern Woodman | $3,797.00 | |
| F. | Star Joint Checking | $35.00 | |
| G. | Star Joint Checking | $45.00 | |
| H. | Edward Jones [401(k)] | $21,488.00 | $21,488.00 |
| I. | Husband's Fort Financial Accounts | $6,167.00 | |
| J. | Wife's Edward Jones Account | | $4,865.00 |
| K. | AXA Equitable LIP (Marital Portion) | | $1,274.00 |
| L. | Wife's Fort Financial Accounts | | $429.00 |
| M. | Husband's DANA Corp. Pension (Marital Share) | QDRO | QDRO |
| | **TOTAL ASSETS** | **$181,849.00** | **$37,627.00** |
| | **DEBT** | | |
| N. | Fort Financial FCU Mortgage | $54,352.00 | |
| O. | Fort Financial FCU Fusion | $18,770.00 | |
| P. | Partner 1st FCU | | $3,586.00 |

| | | | |
|---|---|---|---|
| | Taurus | | |
| Q. | Cap One Card | $1,971.00 | |
| R. | Sears Card | | $5,121.00 |
| S. | Kohls Card | | $332.00 |
| | **TOTAL DEBTS** | **$75,093.00** | **$9,039.00** |
| | | | |
| T. | Net Assets | $106,756.00 | $28,588.00 |
| U. | Equalization Payment | -39,084.00 | +39,084.00 |
| V. | **Distribution to each party** | **$67,672.00** | **$67,672.00** |

….

23. [Wife] shall receive 50% of the coverture portion (September 25, 2004 through September 22, 2007) of [Husband's] Dana Corporation Pension Plan pursuant to a Qualified Domestic Relations Order as provided in finding #20 M.

….

25. [Husband] shall pay $3,500.00 of [Wife's] attorney fees to [Wife's] attorney within 60 days.

Appellant's App. at 9-11. Husband now appeals.

## Discussion and Decision

Husband is challenging the trial court's distribution of property. The division of marital assets is within the trial court's discretion, and we will reverse only for an abuse of that discretion. *Alexander v. Alexander*, 927 N.E.2d 926, 933 (Ind. Ct. App. 2010), *trans. denied*. Where, as here, the trial court has entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), we first determine whether the evidence supports the findings and then whether the findings support the judgment. *Id.* at 934. The trial court's findings and conclusions will be set aside only if they are clearly erroneous. *Id.* We do not

6

reweigh the evidence or assess the credibility of the witnesses, but consider only the evidence most favorable to the judgment. *Id*.

## *I. Marital Residence*

"In a dissolution action, the trial court must divide marital property in a just and reasonable manner, including property owned by either spouse prior to the marriage, acquired by either spouse after the marriage and prior to final separation, or acquired by their joint efforts." *Keown v. Keown*, 883 N.E.2d 865, 868 (Ind. Ct. App. 2008) (citing Ind. Code § 31-15-7-4). There is a rebuttable presumption that an equal division of the marital property is just and reasonable. Ind. Code §31-15-7-5. The trial court may consider various factors when determining whether the presumption has been rebutted, including the contribution of each spouse to the acquisition of property, the extent to which the property was acquired by each spouse before marriage or through inheritance or gift, the economic circumstances of each spouse at the time of the division, conduct of the parties as related to dissipation of property, and earnings or earning ability of the parties. *Id*.

In this case, Husband and Wife each came to the marriage with assets of their own, and during the marriage, they endeavored to some extent to keep their assets separate. The trial court determined that each party should keep the assets owned prior to the marriage, and it appears that both parties desired this outcome. Husband argues that, in light of the fact that the trial court awarded the parties all other assets that they owned prior to the marriage, the court abused its discretion by not awarding him the equity that he had in the marital residence prior to the marriage. However, Husband concedes that "there are certain factors missing

7

from the record for the trial court to be able to determine whether the martial residence had any accumulated equity prior to the marriage." Appellant's Br. at 11. Husband may not claim reversible error based on his own failure to introduce evidence. *See Perkins v. Harding*, 836 N.E.2d 295, 301 (Ind. Ct. App. 2005) ("[A]ny party who fails to introduce evidence as to the specific value of the marital property at the dissolution hearing is estopped from appealing the distribution on the ground of trial court abuse of discretion based on that absence of evidence.") (quoting *In re Marriage of Church*, 424 N.E.2d 1078, 1081-82 (Ind. Ct. App. 1981)). The burden of producing evidence as to the value of marital property is on the parties, not the court. *Id*. By asking us to remand for further evidentiary proceedings, Husband is essentially asking us for a second bite at the apple. He cites no authority indicating that he is entitled to an additional opportunity to present evidence.

The evidence that was presented supports the trial court's conclusion that the residence should be treated differently than other premarital assets. Wife also owned a home before the marriage. She sold the home and invested a portion of the proceeds to make improvements to Husband's residence. Wife also testified that she and Husband both contributed to paying for the addition of a garage, living room, and hot tub. Wife testified that when they refinanced in 2008, the new loan paid off the original mortgage, her credit cards, and the loan on a lawnmower that Husband purchased. After the refinance, she contributed $200 per month to the mortgage payment. Wife also estimated that she performed more than half of the work to maintain the property, such as mowing and cleaning.

8

Although Husband contradicted some of her testimony, we consider only the evidence favorable to the judgment, and based on that evidence, we find no abuse of discretion.

## *II. Division of Pension*

The trial court determined that Wife "shall receive 50% of the coverture portion (September 25, 2004 through September 22, 2007) of [Husband's] Dana Corporation Pension Plan." Appellant's App. at 11. The trial court did not calculate the value of this asset in the table included in its order, but simply entered the text, "QDRO." *Id.* at 10. Husband argues that the undisputed evidence indicates that his Dana pension ceased to accrue before the marriage. Wife concedes that this is true. Husband ceased employment with Dana Corporation in 2002, before Husband and Wife were married. *See Hardin v. Hardin*, 964 N.E.2d 247, 251 (Ind. Ct. App. 2012) ("Pension funds accrue during an employee's service to his or her employer and cease to accrue when an employee's employment ends, either by retirement or other means.").

Nevertheless, Wife argues that the error was harmless because it results in an award of $0. We have described the coverture fraction formula as follows:

> The "coverture fraction" formula is one method a trial court may use to distribute pension or retirement plan benefits to the earning and non-earning spouses. Under this methodology, the value of the retirement plan is multiplied by a fraction, the numerator of which is the period of time during which the marriage existed (while pension rights were accruing) and the denominator is the total period of time during which pension rights accrued.

*In re Marriage of Preston*, 704 N.E.2d 1093, 1098 n.6 (Ind. Ct. App. 1999). Using this formula, the numerator of the coverture fraction is zero, resulting in a sum of $0. Because Wife concedes that this provision of the court's order does not entitle her to any money, we

9

agree that the error was harmless. *See Keown*, 883 N.E.2d at 870-71 (affirming division of property that may have erroneously included an asset in which the parties had no interest because neither party was prejudiced, and therefore any error was harmless).

### III. Exclusion of Assets from Marital Pot

Husband argues that the trial court erred by first setting aside the assets that each party accumulated prior to the marriage and then dividing the remaining assets in half. In support, he cites *Montgomery v. Faust*, 910 N.E.2d 234 (Ind. Ct. App. 2009). In a previous appeal in that case, we instructed the trial court to put all of the marital property, including property owned by the parties prior to the marriage, into the marital pot before determining the appropriate division. On remand, the court purported to place all assets in the marital pot, but then, "citing the short duration of the marriage, stated that it was returning to each party all property that each owned prior to the marriage 'and thereafter equitably dividing the remaining Assets and Debts on a substantially equal basis.'" *Id.* at 237 (citation to record omitted). The wife appealed a second time, arguing that the trial court had not complied with our instructions on remand. We agreed, stating:

> The "one-pot" requirement is no mere technicality. When dividing marital property, the trial court must, at a minimum, be "sufficiently apprised of the approximate[ ] gross value of the marital estate." The requirement that all marital assets be placed in the marital pot is meant to insure that the trial court first determines that value before endeavoring to divide property. In doing so, the trial court is compelled to confront the actual extent of the disparate treatment, if any, that results from its division of the property, rather than merely labeling the distribution "unequal," as the trial court did in this case. It is not enough for a trial court to simply say that its distribution is "unequal"; just as important is exactly how unequal the distribution is.… In short, knowing the numerical split of the entire estate might alter the trial court's view of the appropriateness of its property division.

10

*Id*. at 238 (citations omitted).

Husband appears to be technically correct that the trial court did not properly apply the "one-pot" method of dividing assets. However, we conclude that there is no reversible error in this case. First, Husband has not identified which assets the trial court excluded from the pot. From our review of the record, it appears that the trial court set aside each party's personal property that was owned prior to the marriage. In addition, Husband received his Dana pension and the portion of his Fort Financial IRA that accrued prior to the marriage, and Wife received the portion of her Equitable Life Insurance Policy that accrued prior to the marriage. Husband does not make any claim to any of these assets set aside to Wife; in fact, he states that he "does not disagree the parties should be awarded premarital property." Appellant's Br. at 13-14. In fact, the trial court employed essentially the same methodology as the proposed property division that Husband submitted to the trial court. *See* Respondent's Ex. C (calculating the value of assets accumulated during marriage and dividing them equally). In this case, any error by the trial court was invited by Husband. *See Berman v. Cannon*, 878 N.E.2d 836, 839 (Ind. Ct. App. 2007) ("A party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct. Invited error is not subject to review by this court.") (citation omitted), *trans. denied*. We decline to remand to the trial court for the sole purpose of calculating the true percentage of the marital pot distributed to each party.

### IV. Attorney's Fees[1]

Indiana Code Section 31-15-10-1(a) provides:

> The court periodically may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this article and for attorney's fees and mediation services, including amounts for legal services provided and costs incurred before the commencement of the proceedings or after entry of judgment.

An award of attorney fees is reviewed for abuse of discretion. *Hartley v. Hartley*, 862 N.E.2d 274, 286 (Ind. Ct. App. 2007) (citations omitted).

> We review a trial court's award of attorney fees in connection with a dissolution decree for an abuse of discretion. The trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before it. When making such an award, the trial court must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and other factors that bear on the reasonableness of the award.

*Id*.

Husband argues that the trial court abused its discretion by ordering him to pay a portion of Wife's attorney's fees because the disparity in their income "is due, in large part,

---

[1] In the last paragraph of her argument, Wife states that we "could … properly award additional attorney fees" for defending an appeal. Appellee's Br. at 14. Wife does not appear to be arguing that Husband's appeal was frivolous or in bad faith. *See* Ind. Appellate Rule 66(E) (authorizing an appellate court to award attorney fees when an appeal is frivolous or in bad faith). Instead, she relies on *Burkhart v. Burkhart*, 169 Ind. App. 588, 599-600, 349 N.E.2d 707, 714-15 (Ind. Ct. App. 1976), in which we stated that "trial courts have [broad] discretion in awarding or denying attorneys' fees in divorce actions," and that appellate fees "are also a proper element of an award for attorneys' fees." *Burkhart* is not on point because Wife never requested appellate attorney fees from the trial court. While a trial court has broad discretion for awarding attorney fees, we are typically more cautious in ordering attorney fees, as we do not wish to chill the right to appeal. *See Novatny v. Novatny*, 872 N.E.2d 673, 682 (Ind. Ct. App. 2007) (declining to award appellate attorney fees where one party failed to comply with Appellate Rules, but we concluded that the noncompliance did not rise to the level of "flagrant" disregard for the rules). Although Wife's attorney represents that he is representing her pro bono, we cannot determine from the record before us that Wife would have been unable to defend the appeal using her own financial resources. In fact, Wife's request for addition attorney fees is little more than an aside. We conclude that Wife has not presented us with a sufficiently compelling reason for awarding appellate attorney fees.

to Wife not actively seeking gainful employment." Appellant's App. at 14. Wife's testimony indicates that, when factoring in the cost of benefits, she would earn less working her job at Coupled Products than by participating in the strike and receiving pay and benefits from her union. Wife did not testify one way or the other concerning her efforts to find work elsewhere, and Husband did not elicit any testimony on this point. Husband acknowledged that he had typically earned more than Wife. Wife requested attorney's fees in the amount of $13,141.16, but the trial court awarded only $3,500. Husband has not persuaded us that this was an abuse of the trial court's discretion. The judgment of the trial court is affirmed.

Affirmed.

VAIDIK, J., and BRADFORD, J., concur.